(May 14, 1985)

■ GOODSTEIN CONSTRUCTION CORP., DIC-UNDERHILL INDUSTRIES and MILSTEIN PROPERTIES, a Joint Venture, Respondent, v CITY OF NEW YORK, Appellant. — Order, Supreme Court, New York County (Orest V. Maresca, J.), entered on or about November 15, 1984, denying defendant's motion to dismiss the first and second causes of action pursuant to CPLR 3211 (a) (7), affirmed, without costs or disbursements.

The action was brought to recover damages resulting from the city's breach of designation agreements entered into on June 2, 1982, with respect to the development of sites 5B and 5C within

the Washington Street Urban Renewal Area. These agreements superseded the more limited letter agreements of January 29 and February 1, 1982 between these parties. The designation agreements, unusually detailed and clearly enforceable, provided for the selection of plaintiff "to exclusively negotiate the terms and conditions of a land disposition agreement ('LDA') with HPD" to develop the sites. The agreements obligated plaintiff to cooperate with the Department of Housing Preservation and Development (HPD) in fulfilling necessary legal requirements so as to permit the city to validly enter into the LDAs and required that HPD expeditiously undertake to satisfactorily complete necessary legal requirements, including Board of Estimate approval.

The designation agreements imposed a number of immediate and express financial obligations upon the plaintiff: (1) Delivery of a certificate of deposit for $100,000 as "an assurance deposit that you will diligently proceed with the negotiations and take all necessary steps to further the Project" (Jan. 29 and Feb. 1, 1982 letters); (2) Delivery of a letter of credit for $100,000 (par 1 of June 2, 1982 letter); (3) "develop, at your sole risk, cost and expense, building designs, marketing concepts, massing studies and financial projections" (para 2 of June 2, 1982 letter); (4) "promptly" deliver "progress drawings including sketches of typical floors, lobby, elevations, plaza and landscaping layouts" (para 2 of June 2, 1982 letter); (5) maintenance "for public use and access * * * Washington Market Park" up to termination date (para 9 of June 2, 1982 letter).

Plaintiff alleges that it had fully performed under the agreement, expending considerable time, effort and resources and that LDAs had been negotiated and agreed upon when, on November 29, 1983, HPD sent a letter terminating the designation of plaintiff as developer of the sites. Thereafter, the parties participated in an unsuccessful administrative hearing to resolve their differences. At that point, plaintiff brought a CPLR article 78 proceeding to vacate and annul the determination, asserting that HPD's action dedesignating it was arbitrary and capricious.

After filing a notice of claim, this action was commenced on May 4, 1984. The first cause of action charges the city with breach of the designation agreements, failure to cooperate and bad faith in fulfilling its obligations thereunder, as a result of which plaintiff seeks to recover sums expended by it and consequential damages. The second cause of action alleges that the city breached its obligation of good faith, in particular, frustrating an agreement between plaintiff and Shearson/American

Express, Inc. as a prospective tenant, in regard to the execution by Shearson of a negotiated deal to lease substantial office space to be built on site 5B. It is asserted that defendant, through the then Deputy Mayor, improperly interfered with plaintiff's performance and with the conduct of its negotiations during the exclusive negotiation period, culminating in the improper termination of plaintiff as developer. It is further claimed that the city breached the negotiation letters by not granting tax abatements.

We agree with Special Term that, applying the standard applicable on a motion to dismiss, pursuant to CPLR 3211 (a) (7), the first and second causes of action do state cognizable claims for relief. On such a motion, the complaint is to be liberally construed in a light most favorable to the plaintiff and the facts alleged accepted as true (*Morone v Morone,* 50 NY2d 481). The designation agreements obligated both parties to cooperate and exert their best effort in the creation and negotiation of a plan for the development of the sites. Clearly, the letter agreements by their nature did impose a covenant of fair dealing and good faith, an obligation implicit in all contracts. (*Brassil v Maryland Cas. Co.,* 210 NY 235, 242; *Kirke La Shelle Co. v Armstrong Co.,* 263 NY 79, 85; *Underhill v Schenck,* 238 NY 7.)

Our dissenting colleague has concluded that the designation letters were unenforceable agreements to agree, relying in part upon the absence of (1) an agreement under which plaintiff would acquire title to the sites for development purposes and (2) required approval of the Board of Estimate. The position, however, does not consider that these were not agreements for the disposition of city property. Rather, the action seeks to recover for the breach of the city's obligations with regard to the designation of plaintiff as developer, with exclusive authority to negotiate the terms and conditions of land disposition agreements for a designated period of time. The record does not establish that, as a matter of law, HPD was without authority to approve plaintiff's designation.

In that respect, the situation here is analogous to that in *Rochester Park v City of Rochester* (38 Misc 2d 714, *affd* 19 AD2d 776), which likewise involved a claim against a municipality for breach of the obligations of good faith and cooperation in connection with the development of an urban renewal project. In *Rochester* (p 721) it was held that the contract did not involve the disposition of land but was "preliminary and preparatory to such a disposition contract, and contemplated cooperation in developing a redevelopment plan which * * * would require adoption and approval by the proper authorities before any

contract of disposition of the project lands * * * could be entered into."

In the context of the motion addressed at Special Term, whether plaintiff had a right to expect or count upon the Board of Estimate's approval is not dispositive. The immediate responsibility on the part of HPD to proceed and negotiate in good faith is separate and distinct from any obligation to consummate the transaction which clearly is the sole province of the Board of Estimate. These were not contracts for the disposition of city land. Therefore, whether the Board of Estimate would be obliged to approve any LDA and dispose of the sites in a manner proposed by plaintiff is not at issue. While the designation agreements contain intricate terms and conditions of the respective obligations of the parties, their intention is clearly and unambiguously set forth. Accordingly, this court must give full effect to the intent of the parties as reflected by the language used in their agreement (*Slatt v Slatt,* 64 NY2d 966; *Laba v Carey,* 29 NY2d 302, 308; *Hall & Co. v Orient Overseas Assoc.,* 65 AD2d 424, *affd* 48 NY2d 958). We may not, under the guise of contract construction, create a new contract (*Morlee Sales Corp. v Manufacturers Trust Co.,* 9 NY2d 16).

In sum, here, the designation agreements did impose the implied obligations of good faith, cooperation and fair dealing implicit in any contract. Upon a breach of these obligations, the law does afford a remedy. These were not mere agreements to agree, rather, they created present duties by both parties. The express terms of the letter agreements obligated HPD to "undertake and expeditiously complete all of its obligations in connection with the Legal Requirements, including the ULURP precertification process." As further evidence of the city's recognition of the progress made by plaintiff towards the agreed-upon objective was the fact that the superseding June 2, 1982 agreement eliminated the city's right to terminate.

Final resolution of these issues, however, cannot be made on a motion addressed to the face of the pleading nor on the basis of any speculation as to the extent of resulting damages. Concur — Kupferman, J. P., Carro and Kassal, JJ.

Murphy, P. J., dissents in a memorandum as follows: Defendant city appeals from the denial of its motion to dismiss the first two causes of action of the complaint. Plaintiff, a joint venture between Goodstein Construction Corp., Dic-Underhill Industries and Milstein Properties, alleges in both causes a breach by the city of its obligations of good faith and fair dealing with regard to certain alleged agreements concerning development of sites 5B and 5C of the Washington Street Urban

Renewal Area (WSURA). The land comprising WSURA is owned by the city and administered by the Department of Housing Preservation and Development (HPD). In 1981, HPD publicly issued certain "Requests for Proposals" which invited the submission of development plans for the two sites in question. By designation letters dated January 29 and February 1, 1982, HPD informed the plaintiff that it had been selected to exclusively negotiate with the city for 90 days on the terms of "Land Disposition Agreements" (LDA) for sites 5B and 5C. Both letters stated that "[T]he City retains the right to terminate negotiations at any time." The obligations of the parties were further delineated in letters dated June 2, 1982. Plaintiff undertook to furnish letters of credit and "to develop, at [plaintiff's] sole risk, cost and expense, building designs, marketing concepts, massing studies and financial projections". The end result of these efforts was to be an LDA agreeable to both HPD and the plaintiff for submission to the city's Board of Estimate.

In 1982, the city, responding to threatened relocations in the financial and securities industries, instituted a study for the purpose of proposing ways by which the city could forestall the loss of back office jobs. The study concluded that, as a preventive measure, the city should set aside large parcels of city-owned land for direct sale to companies wishing to construct their own back office space without the added expense and delay that the use of a developer might entail. As a direct result of this study the city terminated negotiations with plaintiff.

On its first cause of action plaintiff seeks damages of $500,000,000 "representing sums expended pursuant to the designation agreements and the amount attributable to the loss of the Sites." On the second cause of action damages in the amount of $100,000,000 are allegedly resulting from the loss of a contemplated lease to Shearson/American Express of commercial premises which plaintiff intended to construct on site 5B as well as related development costs. The damage claims presuppose the existence of an enforceable agreement whereby plaintiff would acquire title to the sites for development purposes. No such agreement was reached, nor does plaintiff argue that the city ever so obligated itself. General Municipal Law § 507 authorizes the sale or lease of municipal property only upon the authorization of the appropriate "governing body". In the case of New York City, approval of the Board of Estimate is required (NY City Charter § 67 [4]). The letters of designation explicitly recognize the fact that any LDA agreed to by HPD and plaintiff had to be "approved as to form by the Office of the Corporation Counsel prior to submission for final approval by the Board of

Estimate". Whatever legal relationship resulted from the designation letters, they could, at best, constitute merely an unenforceable "agreement to agree" as to the final sale and development of sites 5B and 5C (*Willmott v Giarraputo,* 5 NY2d 250).

Assuming plaintiff has established that under the designation letters HPD obligated itself to negotiate and complete a LDA for submission to the Board of Estimate, any breach of the designation agreements did not damage plaintiff. Had HPD fulfilled its alleged obligation and a LDA for developing the sites been created, plaintiff had no right to expect Board of Estimate approval. Indeed, in light of the city's change in utilization policy, it is inconceivable that any such approval would be forthcoming. In commenting upon the termination of a housing development project, the Second Circuit Court of Appeals stated: "It seems to us that it is a proper exercise of discretion for HDA to terminate a project when it feels that the Board of Estimate is unlikely to approve it because of public protest and political considerations" (*Citizens Comm. v Lindsay,* 507 F2d 1065, 1072). Therefore, insofar as plaintiff seeks recompense for the loss of the sites or the anticipated commercial use thereof, plaintiff's claim is overly speculative and insupportable. (*Freund v Washington Sq. Press,* 34 NY2d 379; *Manniello v Dea,* 92 AD2d 426.) Nor is this, as plaintiff argues, an instance where the city, by preventing the performance of a condition, concurrently seeks to avoid liability by asserting such nonperformance as a defense. Simply stated, there was no contractual condition the performance of which would obligate the Board of Estimate to approve any LDA and dispose of the sites in the manner proposed by plaintiff.

Plaintiff may not recover the expenses it incurred in the developmental planning of the sites. The designation letters explicitly state that any such endeavors were to be undertaken at plaintiff's "sole cost and expense." Any expenditures by the plaintiff were made with no expectation of reimbursement by the city, and no contract on the city's part to do so may be implied in contradiction to the parties' intentions. (*Tibbets Contr. Corp. v O&E Contr. Co.,* 15 NY2d 324; *Chinnery v Kennosset Realty Co.,* 286 NY 167; *see also,* 22 NY Jur 2d, Contracts, §§ 509-512.)

Insofar as the first two causes of action seek relief to which plaintiff is clearly not entitled, I would grant the city's motion to dismiss. At best plaintiff has alleged a breach calling for the technical award of nominal damages (*Good Karma Prods. v Penthouse Intl.,* 88 AD2d 561). I would therefore give plaintiff leave to amend its contractual claims to make it clear that they

are predicated upon the failure of HPD to enter into an LDA, rather than the failure to convey municipally owned property as the first two causes of action apparently allege. While pleadings are to be liberally construed, plaintiff's first two causes of action are drawn so "as to reasonably mislead one as to the identity of the transactions or occurrences sought to be litigated or as to the nature and elements of the alleged cause" (*Foley v D'Agostino,* 21 AD2d 60, 66; *see generally,* 3 Weinstein-Korn-Miller, NY Civ Prac ¶ 3013.03).