**David C. WALTENTAS, Plaintiff,**

v.

**Kenneth LIPPER, John Doe #1, John Doe #2, John Doe #3, John Doe #4, and John Doe #5, Defendants.**

No. 85 Civ. 1712 (LLS).

United States District Court,
S.D. New York.

June 3, 1986.

---

**332**

Fischbein, Olivieri, Rozenholc & Badillo, New York City, for plaintiff; Richard S. Fischbein, Barry M. Schreibman, Kenneth O. Schwarz, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City, for defendants; Jeffrey Schanback, Steven Anderson, Asst. Corp. Counsel, of counsel.

## OPINION

STANTON, District Judge.

Plaintiff David Walentas, a real estate developer in New York, brings this action pursuant to 28 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343, against defendant Kenneth Lipper,[1] at relevant times Deputy Mayor for Finance and Development for New York City, alleging that Lipper, acting under color of state law, deprived plaintiff of property and liberty interests without due process of law. Defendant moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted.

### Facts

In April and November 1981, plaintiff purchased, with intent to convert to rentable office space, several buildings located near the Brooklyn Bridge, known cumulatively as the "Brooklake property". Adjacent to that parcel is a piece of property, known for purposes of this law suit as the "RFP site", owned in part by the City of New York and in part by New York State.

In June 1981 the city, through its Public Development Corporation ("PDC"), and the state, through its Urban Development Corporation ("UDC") and its Office of Parks, Recreation and Historic Preservation ("OPRHP"), solicited development proposals for the RFP site. As defendant's position included oversight of the operations of PDC, it is claimed he had considerable control over who would be selected as developer of the project.

---

1. Plaintiff also names as defendants John Doe ## 1–5, stating that their identities are presently unknown, but will be determined through discovery.

For purposes of this motion, however, only defendant Lipper is discussed, as he alone moves to dismiss.

The selection process had two phases. Initially, a successful candidate received a conditional designation; he then had to complete various detailed obligations satisfactorily and at his own expense, under a contract between himself and PDC, UDC and OPRHP, before being designated the developer of the project.

On May 27, 1982 plaintiff was conditionally designated by PDC, UDC and OPRHP ("the Parties") as the developer of the RFP site. He and the Parties signed a Conditional Designation agreement ("the Agreement"), looking to the negotiation of various terms and plans by the Parties with plaintiff and their cooperation with him by providing their approval and directions where required. The Agreement allowed the Parties to terminate it if they were not satisfied with the progress of the negotiations.

Plaintiff proceeded, according to the Agreement, with plans for developing his land and the RFP site. He obtained approval from the City Board of Estimate for an application (Urban Development Action Grant Application) for federal monetary assistance. He submitted applications to the state for tax reductions and low interest loans. In September and October 1983, plaintiff reached agreement with PDC and UDC regarding physical alterations for the site and final budget.

In December 1983 plaintiff entered into negotiations with Lehman Brothers Kuhn Loeb ("Lehman Brothers") regarding leasing by Lehman Brothers of a portion of the Brooklake property. All of the conditions and terms of the lease were agreed upon that month, but a final agreement was contingent upon the plaintiff obtaining the tax reductions sought.

Plaintiff's version, taken as true for purposes of this motion, *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972), is that all was going smoothly until defendant Lipper, who personally disliked plaintiff and was dissatisfied with the way plaintiff had managed some other business ventures between them, used his powers as Deputy Mayor of Finance and Development and as overseer of the PDC to stop plaintiff from carrying out his development plans and from being chosen as the developer of the RFP site.

Specifically, plaintiff claims that: (1) defendant directed the president of PDC to impose additional burdensome restrictions on plaintiff, such as finding partners who could guarantee financing of the entire project, to be satisfied in less than two months, or the city would no longer consider him for developer; (2) at the same time, defendant "made it known" to potential partners of plaintiff that the city would "view [them] with extreme disfavor" if they agreed to join plaintiff in the development of the RFP site; (3) defendant, as chairman of the New York Industrial Commerce Incentive Board, to which plaintiff had applied for tax reductions, delayed plaintiff's application, which resulted in Lehman Brothers' declining to reach a formal lease agreement with plaintiff; plaintiff was eventually told that the application would be denied; (4) defendant knowingly gave Councilwoman Ruth Messinger false and disparaging information about plaintiff, which, in February 1984, Councilwoman Messinger disseminated to the public in a press conference; (5) publicly stating he would forward Councilwoman Messinger's allegations to the New York Department of Investigations and actually doing so, defendant told the Commissioner of Investigations to issue a report confirming the allegations without checking their veracity; (6) when the Department did issue that report in March 1984, defendant, knowing the report to be false, distributed copies to the press; (7) in February 1984, defendant told a Daily News reporter, without first consulting either UDC or OPRHD, that plaintiff would not be the developer of the site; (8) in March 1984, defendant held a press conference, without consulting either UDC or OPRHP, during which he made false and disparaging remarks about plaintiff and formally de-designated plaintiff as developer of the site; and (9) on the same day, the president of PDC wrote plaintiff a letter, at the direction of defendant, inform-

ing him that he had been de-designated as developer.

### Section 1983

To assert a claim under § 1983 plaintiff must show that, as a result of state action, he was deprived of a right protected by the Constitution and federal laws. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980); *Wiess v. Willow Tree Civic Association*, 467 F.Supp. 803, 809 (S.D.N.Y.1979). Since plaintiff claims he was deprived of rights protected by the Fourteenth Amendment, he must show that the state deprived him of a life, liberty or property interest without due process of law.

The range of interests protected by the procedural due process clause is not infinite. *Board of Regents v. Roth*, 408 U.S. 564, 572, 92 S.Ct. 2701, 2706–07, 33 L.Ed.2d 548 (1972). Thus, plaintiff must show that the interests of whose deprivation he complains are substantial enough to invoke the protection of federal law and the federal courts.

#### 1. Property interest

Plaintiff claims a property interest in both "good faith consideration of his application" to become developer of the RFP site and an "expectation" that, if he complied with the terms of the Agreement, he would be selected as developer of the site.

■ It is not the Constitution, but rather "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits" that create property interests. *Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. The primary source of property rights is state law. *See Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 447–48 (2d Cir.1980).

■ Plaintiff relies on a recent and factually similar New York decision, *Goodstein Construction Corp. v. City of New York*, 111 A.D.2d 49, 489 N.Y.S.2d 175 (1985), for his claim that the defendant had an obligation to negotiate with him in good faith under the Agreement, a right to which plaintiff asserts he was entitled separately from any right to final designation as developer. *Goodstein* held that the state, as party to a conditional designation agreement between another developer and New York City had an "immediate responsibility ... to proceed and negotiate in good faith ... separate and distinct from any obligation to consummate the transaction". *Id.*, at 52. The court said the obligation of good faith and fair dealing is "implicit in all contracts." *Id.*, at 51. Plaintiff seems to claim that a breach of the Agreement's obligation to negotiate in good faith is the deprivation of a property interest without due process of law.

New York does recognize, in appropriate circumstances, an implied obligation of good faith in contracts. *See Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (N.Y.1983). However, in *Murphy* the court declined to find an obligation of good faith or fair dealing in an at-will employment contract, since either party could terminate the employment at any time, and held that "[n]o obligation can be implied ... which would be inconsistent with other terms of the contractual relationship." *Id.*, at 237, 448 N.E.2d at 90.

The Agreement in this case provides that "the Parties may terminate the negotiations at any time if, in their sole discretion, they are not satisfied with the progress of negotiation or if you [plaintiff] fail to satisfy any of the other conditions set forth in this letter." (Agreement p. 2)

In *Goodstein*, the conditional agreement provided that "the City retains the right to terminate negotiations at any time." *Goodstein*, 111 A.D.2d At 53. The court in *Goodstein* noted, "[t]he designation agreements obligated both parties to cooperate and exert their best effort [sic] in the creation and negotiation of a plan for the development of the sites." *Goodstein*, At 51, 489 N.Y.S.2d 175. Similarly the Agreement requires plaintiff and the Parties to negotiate various terms and plans, and re-

quires the Parties' directions for and approval of plaintiff's activities under it. An implied obligation of good faith is not inconsistent with the terms of this Agreement. *See Wakefield v. Northern Telecom, Inc.,* 769 F.2d 109, 112 (2d Cir.1985) ("Implied contractual obligations may co-exist with express provisions which seemingly negate them where common expectations or the relationship of the parties as structured by the contract so dictate.") The Agreement implies an obligation of good faith and fair dealing on the part of each side to the contract.

■ That obligation, however, is not a property interest protected by the due process clause. The right to good faith negotiation is a contract right, not a property interest.

■ A mere breach of a contractual right is not a deprivation of property, and thus is not actionable under § 1983. There is a distinction between contract interests and protectible property interests. *McCormick v. Oklahoma City,* 236 U.S. 657, 35 S.Ct. 455, 59 L.Ed. 771 (1915), *Brown v. Brienan,* 722 F.2d 360, 363 (7th Cir.1983); *accord, Heath v. City of Fairfax,* 542 F.2d 1236 (4th Cir.1976). The Supreme Court has held that the term "property" includes an expectation of continued employment based upon a contract. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). A public employee holding a position under tenure provisions, a contract or a clearly implied promise of continued employment enjoys a property interest safeguarded by procedural due process. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570; *Goetz v. Windsor Central School District,* 698 F.2d 606, 608–09 (2d Cir.1983). While the line between common law property and contract has been "frayed", only where the breach of contract results in the loss of employment has it been equated with the deprivation of a property interest. *Brown v. Brienan,* 722

F.2d at 363. It is the legitimate expectation of continued employment, and not the contract claim itself, that is protected by due process. *Braden v. Texas A & M University System,* 636 F.2d 90, 92–93 (5th Cir.1981); *Gendalia v. Gioffre,* 606 F.Supp. 363, 366 (S.D.N.Y.1985).

Plaintiff does not argue he was employed by the state through the Agreement. *See Armere Holding Corp. v. Bell,* 37 N.Y.2d 925, 379 N.Y.S.2d 838, 342 N.E.2d 600 (N.Y.1975). He asserts he had an "expectation" that he would be finally selected as developer as long as he satisfied all of the conditions set forth in the Agreement. He claims that the Parties' discretion in selecting a developer was limited, by its obligation of good faith, to simply determining whether plaintiff had satisfied the terms of the Agreement. If so, he would be selected. Plaintiff relies on *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), which held that Nebraska's parole-determination statute, which instructs the Parole Board to grant parole unless one of four stated justifications for deferral exists, gave prisoners an expectation of release entitled to constitutional protection. However, the Agreement gave plaintiff no analogous expectation.

The Agreement between plaintiff and the Parties specifies plaintiff's obligations in some detail. Plaintiff's period as conditional developer was divided into two phases. During the first he was to conduct a study to refine the site and project data including marketing information, cost estimates and engineering studies. During the second phase he was to negotiate and execute a memorandum of intent with the Parties, which would further define (1) the terms of a lease agreement for the project site with plaintiff as tenant and the Parties as landlord, (2) all activities necessary for the development of the project site, (3) the terms of a development fee to be paid to UDC and PDC and (4) any other items the Parties deemed appropriate. The Agreement requires the Parties' approval of "all necessary preliminary plans and specifications

and construction documents for the implementation of the Project design" (Agreement p. 3), and provides that "the Parties may terminate the negotiations at any time if, in their sole discretion, they are not satisfied with the progress of negotiation or if you [plaintiff] fail to satisfy any of the other conditions set forth in this letter." Agreement, p. 2.

This language is quite different from the "unique structure and language" of the statute at issue in *Greenholtz*. 442 U.S. at 12, 99 S.Ct. at 2106. That statute "expressly mandated that the Nebraska Board of Parole 'shall' order the inmate's release 'unless' it decided that one of four specified reasons for denial was applicable." *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 466, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981). The state was thus obliged to act on prescribed grounds. Here, the Parties had no such obligation. The Agreement did not mandate that plaintiff was to be designated as developer if he successfully completed its requirements. Although the conditions plaintiff had to satisfy were set forth in detail, the final selection by the Parties was explicitly discretionary.

Only when procedures impose a "significant substantive restriction" on the defendant's decision making does an expectation of a specific decision become a property interest. *Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir.1984); *Cofone v. Manson*, 594 F.2d 934, 937–38 (2d Cir.1979). No substantive restriction was imposed on the Parties' discretion. They reserved for themselves the right to terminate the arrangement based on their satisfaction. The Parties did have an obligation to negotiate in good faith and cooperate with plaintiff, as discussed *supra*, but that obligation is not inconsistent with their discretionary right to terminate the contract. Even had the Parties acted in good faith and properly exercised their discretion, there is no assurance that they would have selected plaintiff as developer. *See Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 58–60 (2d Cir.1985) (where plaintiff not entitled as a matter of right to license, and no allegation that but

for zoning board members' misconduct board would be required to award plaintiff license, no property interest protectible by due process clause). The Parties' approval was necessary at various stages in the process (for plans and designs, as well as plaintiff's selection of consultants), and there was no guarantee it would be forthcoming, even in the exercise of good faith.

Moreover, plaintiff's selection was contingent upon final approval by the New York City Board of Estimate and the Mayor. Agreement, p. 3. Plaintiff had no right to expect such approval. *Goodstein Constr. Corp. v. City of New York*, 111 A.D. At 52–53, 489 N.Y.S.2d 175 (dissent, Murphy, P.J.); *see Citizens Committee for Faraday Wood v. Lindsay*, 507 F.2d 1065, 1072 (2d Cir.1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1679, 44 L.Ed.2d 102 (1975) (it is proper exercise of discretion for City Housing Development Administration to terminate project when it feels Board of Estimate approval unlikely because of public protest and political considerations).

■ The Supreme Court has made clear that "[t]o have a property interest in a benefit, ... [plaintiff] ... must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Here, plaintiff had no such legitimate claim of entitlement, because he was not entitled to expect that, even if he did satisfy each condition as required, he would be designated as developer.

### 2. Liberty Interest

Plaintiff claims that defendant publicly defamed him, which resulted in the loss of opportunities for plaintiff freely to engage in his chosen occupation, and deprived him of a protected liberty interest without due process of law.

The Supreme Court has found a protected liberty interest "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him". *Wisconsin v. Constanti-*

*neau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). Due process is required to afford the person an opportunity to clear his name, in cases where the defamation also infringes some interest such as employment. *See Board of Regents v. Roth,* 408 U.S. at 573–74, 92 S.Ct. at 2707–08.

The cases do not hold that "reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976). Otherwise, it would be "hard to perceive any logical stopping place to ... a line of reasoning" that permitted every defamation by a state official to result in a violation of the Fourteenth Amendment. *Id.,* at 698–99, 96 S.Ct. at 1159–60.

The Court has held that a liberty interest is involved and due process required when the state terminates an individual's employment and accompanies the dismissal with the publication of false and stigmatizing information about the employee, thus curtailing the employee's future opportunity for employment. *See Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977); *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. at 573–74, 92 S.Ct. at 2707–08; *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438. Such a deprivation of liberty has been recognized not only where the individual is employed by the state, but where he seeks employment with the state and is denied it. *Doe v. United States Civil Serv. Com'n,* 483 F.Supp. 539 (S.D.N.Y.1980).

In *Doe,* the plaintiff had been selected as one of thirty-two finalists for fourteen positions as White House fellows. Doe was not finally selected. She claimed a deprivation of liberty in that defendant recorded and included false and derogatory statements about Doe in her file, thus making them a basis for decision, without affording her the opportunity to refute them. The Court found that she had been deprived of a liberty interest because although Doe was not employed by the government and thus "the defamation alleged by Doe did not alter or extinguish a right or status previously recognized by state law, *see Paul v. Davis, supra,* 424 U.S. at 711, 96 S.Ct. 1155, 1165, the 'government['s] action has operated to bestow a badge of disloyalty or infamy, *with an attendant foreclosure from other employment opportunity.*'" *Doe v. United States Civil Serv. Com'n.,* 483 F.Supp. at 569, (emphasis in original), quoting *Cafeteria Workers v. McElroy,* 367 U.S. 886, 898, 81 S.Ct. 1743, 1750, 6 L.Ed.2d 1230 (1961). The court stated that the factual distinction between *Doe,* where plaintiff claimed she was not selected for employment because of defamatory statements, and cases where the defamation was alleged to have occurred in the course of termination of employment, i.e., *Codd, Bishop, Roth,* "does not render those decisions inapplicable to the circumstances present here." *Ibid.* In those cases, since the plaintiffs did not have "legally cognizable property interest[s] in the government job at stake", *ibid.,* it was not an interest in employment itself that raised a constitutional issue, but rather

> that the liberty interest protected by the Due Process Clause prohibits the government from depriving an individual of government employment on the basis of false charges and then aggravating the injury, and further diminishing employment opportunities, by tarnishing the individual's name and reputation.

*Id.,* at 570.

■ The situation here is analogous to that in *Doe.* Although plaintiff was not employed by the state, he claims he was deprived of that employment on the basis of false charges against him which "maligned [his] professional reputation" and "adversely affected his standing and associations in the community." Plaintiff's Memorandum of Law, p. 27. Specifically, plaintiff alleges that defendant made a statement about plaintiff, which he knew to be false, at a press conference that was

338

called to announce plaintiff's de-designation. Complaint, ¶¶ 59–60. Further, he alleges that defendant used his public office to forward false allegations about plaintiff to the Department of Investigations, and ordered that Department to "issue its own report confirming the allegations irrespective of their truth or falsity." Complaint, ¶ 73. When the Department complied, defendant distributed the Report to the press, knowing its contents to be false. Complaint, ¶¶ 76–77.

To state his claim to a hearing before impairment of his liberty interest by government defamation resulting in denial of public employment, plaintiff must allege that the charges against him are false, *see Codd v. Velger,* 429 U.S. at 627–28, 97 S.Ct. at 884, and were made public by the offending governmental entity, thus impairing plaintiff's "interest in his 'good name, reputation, honor, or integrity'". *Bishop v. Wood,* 426 U.S. at 348, 96 S.Ct. at 2079, quoting *Wisconsin v. Constantineau,* 400 U.S. at 437, 91 S.Ct. at 510; *see Gentile v. Wallen,* 562 F.2d 193, 197 (2d Cir.1977). Plaintiff claims that here.

Accordingly, plaintiff sufficiently pleads a protected liberty interest to withstand a motion to dismiss.

### Parratt v. Taylor

■ Defendant contends that since plaintiff has a sufficient state postdeprivation remedy, namely an Article 78 proceeding, under *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) he has no § 1983 claim for deprivation of his liberty interest; in other words, that the Article 78 proceeding satisfies the due process requirements.[2]

But *Parratt* applies only where the court, "... before reaching the question of the adequacy of the state remedies, ... [finds] ... 'the necessity of quick action' or 'the impracticality of providing any predeprivation process.'" *Burtnieks v. City of New York,* 716 F.2d 982, 988 (2d Cir.1983), quoting *Parratt,* 451 U.S. at 539, 101 S.Ct.

at 1915. Here, the whole thrust of the complaint is that the plaintiff should have received a hearing or equivalent due process opportunity to clear his name before being denied public employment, after being maligned by a city official. Where such predeprivation process should be supplied, *Parratt* does not apply.

### Abstention

■ Defendant urges the court to abstain from exercising jurisdiction, since plaintiff has filed "nearly word-for-word identical complaints" in federal and state court, and thus " '[w]ise judicial administration' counsels that this action be dismissed." Def. Memorandum of Law, p. 18, quoting *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

Since defendant submitted this motion, however, the New York Supreme Court has dismissed all but one of plaintiff's state causes of action, that for tortious interference with a business opportunity, in which plaintiff alleges that defendant maliciously induced Lehman Brothers to decline to execute the lease with plaintiff. *Walentas v. Lipper,* NYLJ, p. 6, col. 3, February 25, 1986 (N.Y.S.Ct.).

As the discussion above indicates, plaintiff has properly asserted in this court a § 1983 claim for deprivation of a liberty interest, based on defendant's dissemination to the public of allegedly false and stigmatizing information about plaintiff in the course of denying him public employment.

While plaintiff could have brought his § 1983 claim in state court, *see United States ex rel. Hill v. Johnston,* 321 F.Supp. 818 (S.D.N.Y.1971) (state courts have same duty as federal courts to uphold the Constitution); *Judo, Inc. v. Peet,* 68 Misc.2d 281, 326 N.Y.S.2d 441 (N.Y.Civ.Ct.1971), he chose instead to proceed with that claim here. I see no reason at this point to

---

**2.** Whether *Parratt* applies to deprivation of liberty claims or is limited to those for deprivation of property has not been finally decided in this circuit, *see McClary v. O'Hare,* 786 F.2d 83, 85–86, (2d Cir.1986), but in either event *Parratt* is inapplicable here.

abstain from exercising jurisdiction over his claim. *See generally, McRedmond v. Wilson,* 533 F.2d 757 (2d Cir.1976) (civil rights actions under § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343, "imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims," quoting *Zwickler v. Koota,* 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444 (1967)).

In *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 the Court held that where there are concurrent state and federal proceedings, exceptional circumstances regarding "conservation of judicial resources and comprehensive disposition of litigation" may warrant dismissal of the federal suit. *Id.,* at 817, 96 S.Ct. at 1246, citing *Kevotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 186, 72 S.Ct. 219, 222, 96 L.Ed. 200 (1952); *see also Arkwright-Boston Manufacturers Mutual v. City of New York,* 762 F.2d 205 (2d Cir.1985).

Here, they do not. Plaintiff's state and federal claims are independent. Although the underlying facts alleged in both proceedings are the same, the facts on which each proceeding will focus will differ. With regard to plaintiff's state claim for tortious interference with his agreement with Lehman Brothers, the testimony and evidence will focus on defendant's role, if any, in delaying plaintiff's application for tax reductions. In this action, the relevant facts will be those surrounding defendant's alleged public defamation of plaintiff and plaintiff's subsequent de-designation. Moreover, plaintiff's federal claim requires an analysis of federal constitutional law, as opposed to the application of state tort law for his state claim. There is thus little possibility of such duplicative litigation as would warrant dismissal of this federal action. *See Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246. I am also mindful of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Ibid.* Abstention from consideration of plaintiff's federal § 1983 claim under these circumstances would be inappropriate.

Conclusion

As a conditional designee with no right to or legitimate expectation of ultimate employment, plaintiff has failed to state a claim under § 1983 for the deprivation of a property interest. He has, however, pleaded a § 1983 claim for deprivation of a liberty interest. Accordingly, defendant's motion to dismiss the complaint is denied.