Dian M. GOTLOB,

v.

Karen C. BEYARD and
John W. Shumaker.

Civ. A. No. 2:92CV891.

United States District Court,
D. Connecticut.

May 25, 1993.

Philip L. Steele, Hartford, CT, for plaintiff.

Carroll T. Willis, Jr., Atty. General's Office, Educ./Dmr Dept., Hartford, CT, for defendants.

### *RULING ON MOTION TO DISMISS*

COVELLO, District Judge.

This is an action for a declaratory judgment and equitable relief for alleged violations of the plaintiff's civil rights. It is brought pursuant to 42 U.S.C. § 1983 against defendant Karen C. Beyard, Vice President for Academic Affairs at Central Connecticut State University ("CCSU") and defendant John W. Shumaker, the President of CCSU.[1] The plaintiff brings this action against the defendants in their official capacities and as individuals.

By way of relief, the plaintiff seeks a declaratory judgment determining that the defendants' conduct violated her rights to due process of the law as protected by the Fourteenth Amendment to the U.S. Constitution, and an order compelling the defendants to reinstate her as the "Coordinator of the Academic Center for Student Athletes" at CCSU. The plaintiff further seeks compensatory and punitive damages.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the defendants have moved to dismiss this action for failure to state a claim upon which relief can be granted. The issue presented is whether the plaintiff's predicate allegations support her assertion that the defendants' conduct violated her Constitutional rights to: (1) the exercise of free speech as protected by the First Amendment, or (2) due process of the laws as protected by the Fourteenth Amendment. For the following reasons, the court grants the defendants' motion to dismiss.

### FACTS

The complaint alleges the following: Connecticut State University ("CSU") employed the plaintiff through a one-year employment contract for the 1992–93 academic year. Pursuant to this contract, the plaintiff served as the "Coordinator of the Academic Center for Student Athletes" at Central Connecticut State University ("CCSU"), a branch of CSU. The defendant Karen C. Beyard, CCSU's Vice President for Academic Affairs, was responsible for evaluating the plaintiff and recommending to the defendant John W. Shumaker, CCSU's President, whether to renew her contract for an additional year.

Prior to December 2, 1991, a student athlete admitted to the plaintiff that he was engaged in gambling and "might have a [gambling] problem...." The plaintiff also learned that three other student athletes were engaged in gambling and "might have similar [gambling] problem[s]."

Shortly thereafter, the chief of campus police, who had learned that the plaintiff might know of students with gambling problems, contacted the plaintiff and asked her to reveal the name of the student athlete who had admitted to gambling and the names of the three other students who were also suspected of gambling. The plaintiff refused, claiming the information was confidential and should not be revealed without the consent of the student.

On December 5, 1991, Beyard informed the plaintiff that she must reveal all information regarding student gambling to the chief of campus police. The plaintiff again refused telling Beyard that the information was confidential and "should not be divulged without the consent of the student and that the public policy considerations of a student athlete's privileged communications should be respected despite the duty to protect the campus community." Beyard disagreed, explaining that "the obligation to protect the campus community should be put first," and again directed the plaintiff to disclose all information regarding gambling to the chief of campus police. The plaintiff asked for and was given time to seek legal counsel regarding her obligation to reveal the requested information to University officials.

---

1. The Board of Trustees for Connecticut State University was originally named as a defendant in this action. The plaintiff, however, has voluntarily withdrawn her claim against the Board of Trustees.

On December 12, 1991, Beyard again instructed the plaintiff to meet with the chief of campus police to reveal the names of the student athletes who had admitted gambling. The plaintiff finally agreed. Upon meeting with the chief of campus police later that day, however, the plaintiff again informed him that she thought the requested information should remain confidential. At this point, the chief of campus police told the plaintiff that it would no longer be necessary for her to reveal the names of student athletes who were suspected of gambling "since it appeared that the names would be of little assistance and the welfare of students was not at stake."

On December 20, 1991, the plaintiff received an evaluation from Beyard stating that the plaintiff had "a serious weakness" in her "ability to work collaboratively [sic] with people whose views (rightly or wrongly) are different from hers." [sic] Beyard also recommended to Shumaker that the school not renew the plaintiff's annual contract. On December 27, 1991, Shumaker informed the plaintiff that her yearly contract would not be renewed.[2]

The plaintiff alleges that the defendants' decision not to renew her employment contract was in retaliation for exercising her rights to free speech under the First Amendment to the U.S. Constitution, in violation of 42 U.S.C. § 1983. The plaintiff also contends that the defendants' conduct violated her right to due process of the law as protected by the Fourteenth Amendment, also in violation of § 1983. The plaintiff finally claims that the defendants' conduct amounted to defamation, tortious interference with contract, and a violation of the Connecticut Free Speech Act, Conn.Gen.Stat. § 31–51q. For the following reasons, the court grants the defendants' motion dismiss.

## STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences in the light most favorable to the plaintiff. *See Schuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991) *cert. den.,* — U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Dismissal is warranted only if under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Frasier v. General Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990) (*citing Schuer*, 416 U.S. at 232, 94 S.Ct. at 1685).

## DISCUSSION

■ 42 U.S.C. § 1983 authorizes any person to seek relief for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a § 1983 claim, the plaintiff must allege that her Constitutional or federal statutory rights have been infringed by persons acting under color of law. *See Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir.1987). Although the defendants concede that they were acting under color of law, they claim that the plaintiff has alleged insufficient facts to show that she was deprived of rights protected by the United States' Constitution or federal laws. The court agrees.

## *DUE PROCESS/PROPERTY INTEREST*

The Fourteenth Amendment to the U.S. Constitution guarantees that no state shall "deprive any person of life, liberty, or property, without due process of the law." U.S. Const. Amend. XIV, § 1. The threshold issue, therefore, is whether the defendants' decision not to renew the plaintiff's yearly employment contract deprived her of "property" within the meaning of the Constitu-

---

2. The plaintiff alleges that the terms of her appointment entitled her to a final one-year renewal in the event that her contract was not extend-

ed. She claims that she received this final appointment for the 1993–94 academic year.

tion.[3] *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Hawkins v. Steingut,* 829 F.2d 317, 321 (2d Cir.1987); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 447 (2d Cir. 1980).

It is universally agreed that the mere expectancy of tenure or renewed employment does not give rise to a property interest protected by the U.S. Constitution. *Perry v. Sindermann,* 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 476–78, 92 S.Ct. 2701, 2709–10, 33 L.Ed.2d 548 (1972); *Dube v. State University of New York,* 900 F.2d 587, 599 (2d Cir.1990); *Hawkins v. Steingut,* 829 F.2d 317, 321 (2d Cir.1987). "A property interest in a particular position, 'arises only when an individual possesses "a legitimate claim of entitlement" to continued job tenure.'" *Hawkins,* 829 F.2d at 321 (*quoting Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 447 (2d Cir.1980) *quoting Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). An "abstract need or desire" or "unilateral expectation" is not sufficient. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. A legitimate claim of entitlement to a particular position may be created by contract provisions, existing rules or understandings, or applicable state laws. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Perry v. Sindermann,* 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972); *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

In *Board of Regents v. Roth,* 408 U.S. 564, 476–78, 92 S.Ct. 2701, 2709–10, 33 L.Ed.2d 548 (1972), an assistant professor whose contract was not renewed claimed, *inter alia,* that the University's failure to provide a hearing and notice of its reasons for nonrenewal violated his right to due process of the law. *Roth,* 408 U.S. at 569, 92 S.Ct. at 2705. Because the assistant professor's contract only secured his employment for one year, supplied a specific date for termination, and did not require renewal "absent sufficient cause," the Court concluded that he did not have a property interest in continued employment. *Id.,* at 578, 92 S.Ct. at 2710.

In deference to *Roth,* the plaintiff concedes that she does not have a legitimate claim of entitlement to tenure or continued employment. To circumvent *Roth,* however, she claims to have a property interest in being "fairly considered for reappointment and tenure" in accordance with the standards set forth in the Collective Bargaining Agreement between Connecticut State University American Association of University Professors and The Board of Trustees for Connecticut State University. The gravamen of the plaintiff's Fourteenth Amendment claim, therefore, is that although she does not have a property interest in reappointment or tenure, she has a legitimate claim of entitlement to a fair application of the University's review process.

To support this contention, the plaintiff claims that the collective bargaining agreement "imposes a substantial restriction on CSU's authority to make employment decisions." She emphasizes that the agreement sets forth specific criteria to determine whether her contract will be renewed which includes the University's needs and "a weighted order of such items as 'load credit activity, research and publication, attendance and participation in conferences and workshops and years in rank.'" The plaintiff further alleges that the agreement prohibits discrimination "with regard to age, race, gender, and other characteristics protected by state and federal law" or "with respect to any legal behavior not detrimental to the students or other members of the university community." She finally relies on Conn.Gen. Stat. § 31–51q, which prohibits employers from discriminating based on free speech, to support her claim of a property interest.[4]

---

3. The plaintiff does not claim that she was deprived of life or liberty protected by the U.S. Constitution.

4. Conn.Gen.Stat. § 31–51q states: "Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution ... provided such activity does not interfere with the employee's bona fide job performance or the working relationship be-

**30**

Similarly, in *Dube v. State University of New York,* 900 F.2d 587, 599 (2d Cir.1990), *cert. den.* —— U.S. ——, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991), the plaintiff claimed that the State University of New York's ("SUNY") decision to deny tenure was "based on reasons irrelevant to the tenure criteria established by the university," amounted to a "distortion of the [required] review process," was not a good faith application of his contractual agreement, and was the result of "arbitrary and capricious" behavior. *Dube,* 900 F.2d at 592–93. The court held that although such conduct might be a breach of contract, it did not violate the Fourteenth Amendment. In reaching this conclusion, the court noted that because the plaintiff had only established that he "was entitled to be considered for tenure review in accordance with established contractual procedures," he had "fail[ed] to meet the threshold requirement of establishing a protected ... 'property' interest." *Id.* at 599. SUNY's distortion of the review process therefore did not violate the Fourteenth Amendment. *Id.,* at 599. *See also Waltentas v. Lipper,* 636 F.Supp. 331, 335 (S.D.N.Y. 1986) ("It is the legitimate expectation of continued employment, and not the contract claim itself, that is protected by due process." (citations omitted)).[5]

As in *Dube,* the plaintiff claims to be entitled to an evaluation in accordance with the terms of her contract. Also like *Dube,* she contends that the defendants violated her contract, "based their decision [not to renew her contract] on reasons irrelevant to the tenure criteria established by the university," failed to exercise good faith, and made an arbitrary and bad faith decision in denying her continued employment. *See Dube,* 900 F.2d at 592–93.

According to *Dube,* however, being "entitled to [consideration] for [continued employment] in accordance with established contractual procedures," fails to "meet the threshold requirement of establishing a protected ... 'property' interest." *Id.,* at 599. Because the plaintiff bases her entire Fourteenth Amendment claim on the allegation of having a property interest in the required contractual process, she has "failed to meet the threshold requirement of establishing a protected ... 'property' interest." *Id.* The plaintiff's Fourteenth Amendment claim is therefore insufficient as a matter of law.

Further, even though the plaintiff's collective bargaining agreement may have required the defendants to consider certain criteria, "not every contractual benefit rises to the level of a constitutionally protected property interest." *Ezekwo v. NYC Health & Hospitals Corp.,* 940 F.2d 775 (2d Cir. 1991). Courts have repeatedly recognized that it would be "neither workable nor within the intent of section 1983 to convert every breach of contract claim against a [state actor] into a federal claim." *Ezekwo,* 940 F.2d at 782 (*quoting San Bernardino Physicians' Services Medical Group v. County of San Bernardino,* 825 F.2d 1404, 1408 (9th Cir. 1987) (alteration in original)). *See also Costello v. City of Fairfield,* 811 F.2d 782, 784 ("A contract dispute ... does not give rise to a cause of action under section 1983.").

In *Waltentas v. Lipper,* 636 F.Supp. 331 (S.D.N.Y.1986), the plaintiff claimed to have a property interest in the implied obligation of good faith and fair dealing. *Waltentas,* 636 F.Supp. at 334–35. The court disagreed,

---

tween the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer."

**5.** Other courts that have addressed this issue have reached similar conclusions. *See e.g., Kovats v. Rutgers, The State University,* 822 F.2d 1303, 1314 (3d Cir.1987) (A property interest must "be based on more than the regulations setting out procedures for tenure evaluations."); *Goodisman v. Lytle,* 724 F.2d 818, 820–21 (9th Cir.1984) (Although the plaintiff's contract conditioned tenure on academic merit, scholarly ability, and institutional needs, that agreement did not encompass a property interest.); *Siu v. Johnson,* 748 F.2d 238, 243 n. 11 (4th Cir.1984) (Tenure review procedures do not constitute property interest.); *Varma v. Blousten,* 721 F.Supp. 66 (D.N.J.1988), ("The mere fact that specific procedures for tenure evaluations have been set out does not create property interests....").

holding that "[t]he right to good faith negotiation is a contract right, not a property interest." *Id.*, at 335, *aff'd, Waltentas v. Lipper,* 862 F.2d 414, 419 n. 1 (2d Cir.1988) (The implied obligation of good faith and fair dealing is " 'a contract right, not a property interest,' and thus not entitled to section 1983 protection."). The court further noted that "[t]here is a distinction between contract interests and protectable property interests[ ]," and "[a] mere breach of a contractual right is not a deprivation of property, and thus is not actionable under § 1983." *Id.* (*citing McCormick v. Oklahoma City,* 236 U.S. 657, 35 S.Ct. 455, 59 L.Ed. 771 (1915); *Brown v. Brienan,* 722 F.2d 360 (7th Cir. 1983); and *Heath v. City of Fairfax,* 542 F.2d 1236 (4th Cir.1976)).

As in *Waltentas,* the plaintiff claims that the defendant is bound by an obligation of good faith. Because a "good faith" execution of her agreement requires the interpretation of specific contractual provisions, the court concludes that the plaintiff's claim is essentially a contract dispute and thus not actionable under § 1983. *See Waltentas,* 862 F.2d at 419 n. 1. *See also Costello v. City of Fairfield,* 811 F.2d 782, 784 (2d Cir.1987) (The need to interpret a contract term is an indication that the complainant has pursued a "contract dispute in the district court under the guise of a due process violation."); *Ezekwo,* 940 F.2d at 782 ("[N]ot every contractual benefit rises to the level of a constitutionally protected property interest."). For all of the foregoing reasons, the plaintiff's Fourteenth Amendment claim is dismissed.

*FIRST AMENDMENT CLAIM*

It is well "settled that a State cannot condition public employment on a basis that infringes on the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983). Accordingly, the Supreme Court has repeatedly held that public employers may not retaliate against their employees for exercising rights to free speech. *See e.g., Connick v. Myers,* 461 U.S. 138, 146–47, 103 S.Ct. 1684, 1689–90, 75 L.Ed.2d 708 (1983); *Mount Healthy School Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977);

*Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The Court has recognized, however, that public employees' do not enjoy absolute protection under the First Amendment and not all restraints on their speech are unreasonable. *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734. *See also Janusaitis v. Middlebury Volunteer Fire, Etc.,* 607 F.2d 17, 25 (2d Cir.1979). The Court has also recognized that public employers have "a legitimate interest in regulating the speech of [their] employees that differs significantly from its interest in regulating the speech of people in general." *Piesco v. City of New York, Dept. of Personnel,* 933 F.2d 1149, 1155 (2d Cir. 1991) (*citing Connick,* 461 U.S. at 140, 103 S.Ct. at 1686 and *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734).

■ Whether an employee's speech is protected by the First Amendment initially depends on whether it addresses a matter of public concern. *Connick,* 461 U.S. at 146–47, 103 S.Ct. at 1689–90. "The test [for public concern] is whether, as a matter of law, 'the content, form and context of a given statement, as revealed by the whole record,' constitute speech on a matter of public concern." *Giacalone v. Abrams,* 850 F.2d 79, 86 (2d Cir.1988) (*quoting Connick,* 461 U.S. at 147–48 & n. 7, 103 S.Ct. at 1690–91 & n. 7). This is a threshold inquiry that simply establishes whether the employee has "*some* First Amendment interest at stake." *Giacalone,* 850 F.2d at 86 (emphasis in original).

■ If the challenged expression addresses an issue of public concern, the First Amendment will provide protection if it does not "interfere[ ] with the employer's 'effective and efficient fulfillment of its responsibilities to the public.' " *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049 (2d Cir.1993) (*citing Connick,* 461 U.S. at 150, 103 S.Ct. at 1692). To make this determination, a court must "perform a balancing analysis, measuring, inter alia, the extent to which the employee's speech touched upon matters of public concern against the extent to which the employee's conduct interfered with the functioning of the workplace." *Id.* (*citing Connick,* 461 U.S. at 150–52, 103 S.Ct. at 1692–93 and *Rankin v. McPherson,* 483 U.S. 378,

383–84, 107 S.Ct. 2891, 2896–97, 97 L.Ed.2d 315 (1987)). *See also Ezekwo v. NYC Health and Hospitals Corp.,* 940 F.2d 775, 781 (2d Cir.1991) ("[I]f the statements involved address a matter of public concern ... a court [must] balance the interests of the speaker against the state's interest in efficient government." (citing *Rankin,* 483 U.S. at 388, 107 S.Ct. at 2899)); *Rookard v. Health and Hospitals Corp.,* 710 F.2d 41, 46 (2d Cir.1983) (before an expression is protected by First Amendment, the court must decide "whether under all the circumstances, the employee's interest in free comment [outweighs] the State's interest in the efficiency of its public services." (*citing Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734)).

"In striking the balance between these interests, a court should consider whether the speech impaired the employee's ability to perform his duties, disrupted working relationships requiring personal loyalty and confidence, or otherwise impeded the regular operation of the employing agency." *Rookard v. Health and Hospitals Corp.,* 710 F.2d 41, 46 (2d Cir.1983) (*citing Pickering,* 391 U.S. at 569–70 & 572–73, 88 S.Ct. at 1735 & 1737). Additional weight must be accorded to the interests of the employer "[w]hen employee speech concerning office policy arises from an employment dispute concerning the very application of that policy to the speaker...." *Connick,* 461 U.S. at 153, 103 S.Ct. at 1693.

■ In the present case, the plaintiff claims that her repeated refusal to disclose the requested information is protected by the First Amendment. She further alleges that because she told Beyard that "the public policy considerations of a student athlete's privileged communications should be respected despite the duty to protect the campus community," and that "persons with problems involving illegal activities would be discouraged from seeking help if such confidential communications were not respected," her expressions address issues of public concern.

Assuming, for purposes of this decision, that the plaintiff's expressions relate to matters of public concern, the court must decide whether her statements "interfered with the employer's 'effective and efficient fulfillment

of its responsibilities to the public[ ],' " before they will be afforded protection. *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049 (2d Cir.1993). In making this determination, the court must balance "the employee's interest in free comment [against] the State's interest in the efficiency of its public services." *Rookard,* 710 F.2d at 46 (*citing Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734).

In *Giacalone v. Abrams,* 850 F.2d 79 (2nd Cir.1988), the plaintiff, an assistant attorney general, "expressed concern that the litigation strategy formulated by Department officials was legally unauthorized and ethically improper." *Giacalone,* 850 F.2d at 86. Giacalone accused the Department of engaging in "stalling tactic[s]," disagreed with "the legality of retaining ... money pending resolution of [a] dispute," and "allege[d] that the failure to disburse ... settlement proceeds constituted a failure to act in the [public's] best interests." *Id.,* at 87.

The court characterized these expressions as addressing "legitimate differences of legal opinion[ ]," which encompassed "debatable and complex" ethical and legal issues. *Id.* The court further found that although Giacalone had a legitimate "interest in expressing his views on matters of law and legal ethics as to which there was ground for difference of opinion[ ]," his interest was of a "distinctly lesser order of magnitude than it might have been if he had raised the more serious allegation that [his immediate superiors] were participating in some sort of coverup." *Id.* (*citing Connick,* 461 U.S. at 148, 103 S.Ct. at 1691). The court also noted that Giacalone's interest was diminished because "there was room for legitimate difference of opinion on the subjects of Giacalone's concern." *Id.,* at n. 3.

In assessing the employer's interests, the court paid particular attention to whether Giacalone's speech interfered with the "maintenance of discipline and preservation of close working relationships involving personal loyalty or confidence...." *Id.,* at 87. Although the court conceded that the "friction on office discipline was probably minimal because Giacalone largely expressed his frustrations to [his superiors] in private[ ]," *Id.,* it noted that personal confrontations may also

threaten the employer's institutional efficiency " 'by the manner, time and place in which [the employee's message] is delivered.' " *Id.* (*citing Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 415 n. 4, 99 S.Ct. 693 n. 4, 696, 58 L.Ed.2d 619 (1979) (alteration in original)). Because Giacalone's superiors "could hardly count on him to abide by and carry out Department policy[ ]," "the strong negative reaction ... from upper levels of the Department indicate[d] that his actions were viewed as disruptive and inimical to the Department's mission[ ]," and his superiors were "disturbed by his insubordinate insistence on having his conclusions control the handling of the ... dispute[ ]," the court concluded that the balancing test was more likely to tip in the employer's favor. *Id.* (*citing Connick*, 461 U.S. at 154, 103 S.Ct. at 1694).

In the present case, the interests to be balanced are the plaintiff's alleged legitimate concern in helping young people deal with illegal activities, and the defendants' equally important interest in protecting the integrity of amateur athletics and public academic institutions and in keeping those environments free from illegal activities.

As in *Giacalone*, the plaintiff disagreed with her employer's approach to an alleged ethical dilemma. Also, like *Giacalone*, the plaintiff's expressions, here, addressed issues that were "debatable and complex" and encompassed "legitimate differences of opinion."[6] *See Giacalone*, at 87 & n. 3. The weight accorded to the plaintiff's interest is therefore diminished. *See Id.*, at 87 & n. 3. The plaintiff's interest is also afforded less weight than if she "had raised the more serious allegation that [the defendants'] were participating in some sort of coverup." *Id.*, at 87.

The defendants, on the other hand, have a compelling responsibility to the public to keep amateur athletics and public academic institutions free from illegal activities. The defendants also have an important interest in maintaining "discipline and preservation of close working relationships involving person-

al loyalty or confidence...." *Giacalone*, 850 F.2d at 87. The court concludes that these interests outweigh the plaintiff's limited First Amendment interest, if any, in speaking out on issues of confidentiality. Because the plaintiff's repeated refusal to disclose the requested information "interfered with [the defendants'] 'effective and efficient fulfillment of its responsibilities to the public[ ],' " the court therefore concludes that the plaintiff's expressions are unprotected by the First Amendment. *See White Plain's Towing*, 991 F.2d 1049 (*quoting Connick*, 461 U.S. at 150, 103 S.Ct. at 1692). Her First Amendment claim is accordingly dismissed.

*PENDENT CLAIMS*

In addition to the foregoing constitutional claims, the plaintiff alleges three pendent state causes of action. It is clear, however, that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Further, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.*, at 726, 86 S.Ct. at 1139. Counts one, three and four of the plaintiff's complaint are therefore dismissed.

*CONCLUSION*

Because the plaintiff's predicate allegations fail to support her assertion of being deprived of her rights as protected by the U.S. Constitution or federal statutes, the court concludes that she has failed to state a claim for relief under 42 U.S.C. § 1983. Further, because the court has dismissed the plaintiff's only federal claim, the court accordingly dismisses her three pendent state claims. The defendant's motion to dismiss (Doc. No. 7) is therefore granted and the complaint is dismissed.

SO ORDERED.

---

6. Because the plaintiff eventually agreed to comply with the defendants' orders, and she does not allege that the defendants' requests for information were unlawful, the court concludes that

there was "room for legitimate difference of opinion on the subject of [the plaintiff's] concern." *See Giacalone*, 850 F.2d at 87 n. 3.