Maria GARRETTO, Plaintiff,

v.

Arthur COOPERMAN, Chairman, William Kroeger, Vice-Chairman, George E. Yerry, Jr., Ilene J. Slater, Ernest Latham, George Bevan, Walter Shields, Seymour Posner, Ferdinand Tremidi, Dr. Henry Christman, Monica Gollub, Daniel Higgins, and Francis Griffin, comprising the New York State Workers' Compensation Board, Defendants.

No. 80 Civ. 7056 (PNL).

United States District Court, S. D. New York.

March 24, 1981.

As Amended May 6, 1981.

---

David MacRae Wagner, Finkel & Vogel, New City, N. Y., for plaintiff.

Stephen M. Jacoby, Asst. Atty. Gen., New York City, for defendants.

## OPINION AND ORDER

LEVAL, District Judge.

Plaintiff Maria Garretto sues to enjoin the New York State Worker's Compensation Board from terminating her employment as a Worker's Compensation Law Judge. Plaintiff's motion for a preliminary injunction is hereby denied.

Plaintiff was employed as a Compensation Law Judge (or "Referee") for a seven year term which ended on September 19, 1980. The Board permitted her to continue in office until December 17, 1980. Her suit alleges that the Board failed to reappoint her *"solely* because she is a registered Republican, appointed by a Republican administration, and now in the employment of an agency which has become controlled by the opposing, Democratic Party." Plaintiff claims that the defendants' failure to reappoint her deprives her of her rights under the First and Fourteenth Amendments, and under 42 U.S.C. § 1983.

In order to prevail on her preliminary injunction motion, plaintiff must demonstrate irreparable harm and either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in her favor. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2 Cir. 1979).

■ I find that plaintiff has failed to demonstrate either a likelihood of success

818

on the merits [1] or, under the second branch, a balance of hardships tipping in her direction.

The issue is whether plaintiff comes within the scope of two recent Supreme Court opinions, *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

In *Elrod* the plaintiffs were Republican non-civil service clerical employees in the Cook County, Illinois, sheriff's office. When control of the office shifted from Republican to Democratic hands, the new sheriff discharged employees who did not support, or were not members of, the Democratic party, or did not have the sponsorship of the Democratic leadership.

The Supreme Court ruled, in a plurality opinion, that such patronage dismissals violated First Amendment's guarantee of free political belief and association. It was suggested that the same protection would not apply to policy-making employees—that these would be subject to dismissal by reason of political affiliation so as to protect the power of an elected administration to implement its policies. 427 U.S. at 367, 96 S.Ct. at 2686.

The plaintiffs in *Branti* were Republicans and were Assistant Public Defenders in Rockland County, New York who served at the pleasure of the Rockland County Public Defender. They were terminated by a new, Democratic, Public Defender, appointed to replace a Republican predecessor. Judge Broderick of this court found at trial that plaintiffs were terminated solely because they were Republicans and lacked Democratic sponsors; Judge Broderick also found that the plaintiffs were not policymaking, or confidential employees. He concluded that their discharge violated their First and Fourteenth Amendment rights, on the authority of *Elrod*, 457 F.Supp. 1284, 1290–93 (D.C.1978). The Court of Appeals affirmed. 598 F.2d 609 (2 Cir. 1979).

The Supreme Court also affirmed, holding that the plaintiffs could not be discharged because of their political affiliation.

On the question whether the plaintiffs were subject to the policymaker exception outlined in *Elrod*, the opinion stated:

In sum, the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

445 U.S. at 518, 100 S.Ct. at 1295.

■ If the question continues to have relevance after the *Branti* decision, I would conclude that the position of Compensation Law Judge does fall broadly within the "policy-maker" exception discussed in *Elrod*. These judges, sometimes called Referees, hear and determine claims in a number of categories, including primarily claims for compensation for job-related injury, non-job-related disability benefits, discrimination, or retaliation, claims, and many other claims. In many cases these determinations are made in full formal trial of contested facts. The decision of the Referee is the decision of the Board unless the Board mod-

---

1. In determining plaintiff's likelihood of success, or presentation of serious questions, I am not taking into account two weaknesses in plaintiff's case. The first, and minor, problem is that the individual defendants do not appear to have been properly served. That error is easily rectified, and should not preclude this court from considering the merits of plaintiff's claims; *see generally Grammenos v. Lemos*, 457 F.2d 1067, 1071 (2 Cir. 1972) (Fed.R.Civ.P. 4(a) gives the court the power "if the service is invalid or improper, to cause additional or new summons to be issued and good service attempted.")

The second, more serious, weakness is the apparently open question of whether or not the Supreme Court's decisions in *Elrod, infra*, and *Branti, infra*, 445 U.S. 507 (1980), 100 S.Ct. 1287, 63 L.Ed.2d 574, apply to a case of failure to reappoint. *See generally, Branti* at 512 n.6, 100 S.Ct. at 1291; *but cf. Bavoso v. Harding*, 507 F.Supp. 313 (S.D.N.Y.1980) (*Elrod* and *Branti* applied to a failure to reappoint case). For the purpose of deciding the instant motion I will assume that *Elrod* and *Branti* apply to a failure to reappoint.

ifies or rescinds the decision, which happens in only a small number of cases. Board review is generally based on the record before the Referee although the Board has the power to hear evidence *de novo*. It seems evident given the kinds of decisions Compensation Law Judges must make on mixed questions of fact and law, such as whether an injury occurred within the scope of employment, and degree of disability, that judges who approach the task of adjudication from different points on the political spectrum will produce markedly different results in the functioning of the compensation system. A judge whose political or social philosophy favors a generous paternalistic compensation system will reach results which are often at odds on disputed questions from a more conservative judge who believes in holding down industrial costs by reducing or eliminating awards at the questionable fringes of coverage.

It seems clear, therefore, that a newly elected administration, which sought to achieve objectives in one direction or another in the operation of the compensation system, would accomplish those objectives in part by seeking the appointment of Compensation Judges coming from the same political quadrant. I conclude that a Compensation Law Judge is a "policymaker," in the sense in which that term is used in *Elrod*.

If *Branti* is to be read literally, however, the policymaking responsibilities of the job are of no consequence. The only issue that matters is whether membership in a particular party is a requirement for the effective performance of the duties of the office. It is absolutely clear that party affiliation is not a requirement for the effective performance of the duties of the office of Compensation Judge. Indeed, I find it difficult to think of an office for which party affiliation would be indispensable to the performance of its duties. The only example given by the Supreme Court's opinion is the office of election judge when the law requires that their number be drawn equally from the two major parties. In that case the requirement comes only

from the artificial imposition of a legal requirement of bipartisan appointments. The opinion also suggested that a Governor might be entitled to choose his press secretary, speech writer and legislative liaison on a political basis.

If *Branti* is taken to mean what it says, it raises a question whether President Carter's Cabinet members have a cause of action to retain their Departments in President Reagan's administration. Membership in the same party as the President is not required for effective performance of a Cabinet office. There have been several examples in recent administrations of Cabinet appointments which crossed party lines. Even if Cabinet members are special and outside the *Branti* rule, the same question arises for subcabinet level policymaking positions. Chairmen of federal regulatory commissions, after serving their terms, might be entitled if competent to reappointment by a new President of the opposing party. United States Attorneys would not be subject to politically motivated replacement although the President might have pledged certain law enforcement priorities at the expense of others; *see* dissenting opinion of Justice Powell, 445 U.S. at 525, 100 S.Ct. at 1298.

These observations raise the question whether *Branti* should be read as stating the law on this troublesome question. In the first place the critical observation in *Branti* is dictum. The facts of that case did not raise the issue of a policymaking employee. Judge Broderick had specifically found in the district court that the assistant public defenders in rendering legal services to indigent criminal defendants were not engaged in a policymaking function. The Supreme Court's opinion agreed. 445 U.S. at 519, 100 S.Ct. at 1295. Second, the discussion in the majority opinion shows no evidence of having considered the reasons why a policymaker exception might be important. The opinion discusses only one example of a policy making employee—the coach of a state university's football team; it concluded that he should not lose his job because of party affiliation. Serious ques-

tions can be raised whether the football coach is a policymaker within the meaning intended by the discussion in *Elrod*. Of course the coach makes policies—such as whether to favor a passing or a running attack. The policymakers intended by the *Elrod* exception are those who formulate governmental policy; *see* 427 U.S. at 367, 372, 96 S.Ct. at 2686, 2689, 49 L.Ed.2d 547. It does not appear that the *Branti* opinion gave direct consideration to the issue as it affects true governmental policymakers, no doubt because the issue was not raised by the facts of that case.

Third, the *Branti* formulation is so squarely opposed to the principles of the democratic electoral process in the United States, it is hard to believe the Supreme Court will adhere to this test when a case is considered which involves true policymakers. A candidate for President or for Governor of a state runs for office not only on his personal qualities and experience, but also on his statements of intention as to governmental policy. These statements of intention are often expressed in a party platform adopted after debate at a party convention. In recent history, the two major parties and their candidates have tended to divide along traditional, predictable lines on many such issues of governmental policy. The electorate in casting its vote is voting not only for the occupant of the office but for the policies which have been expressed in the candidate's campaign and party platform. If the newly elected President or Governor is prevented, in the manner suggested by *Branti*, from turning over the occupants of policymaking offices for political reasons, he will not be capable of implementing the policies for which the majority voted. In this sense, I think the *Branti* suggestion would substantially defeat the democratic basis of electoral politics. As a practical matter, it would undermine the ability of the elected executive to put into effect the policies for which the majority voted. *See generally* 445 U.S. at 531–32, 100 S.Ct. at 1301 (Powell, J., dissenting).

█ Although I am reluctant to disregard an asserted dictum in a Supreme Court opinion, my obligation is to rule in accordance with what I believe the rule of law to be. In this case I do not believe the Supreme Court will adhere to the *Branti* dictum when the issue of a maker of governmental policy is before it. I believe the Court will continue, as suggested in *Elrod*, to recognize an exception for policymaking offices.

Accordingly I find that plaintiff is not likely to succeed on the merits. This requires denial of a preliminary injunction under the first branch of the test.

█ My conclusion that plaintiff is not likely to succeed on the merits is further supported by the factual submissions. Although this opinion has assumed up till now that plaintiff can prove that her non-reappointment was politically motivated, her proof of that contention does not appear strong. The State firmly disputes plaintiff's contentions. It asserts that her non-reappointment was based on a merit evaluation which was independent of party politics. Plaintiff does not appear likely to succeed in proving her contentions.

█ The plaintiff also fails under the second branch of the preliminary injunction test. She has not shown a balance of hardships tipped decidedly in her favor. As an eminent, capable and experienced lawyer, plaintiff is perfectly able to earn her living respectably and well while awaiting final adjudication. She made no claim to the contrary. If she succeeds in the end, she can recover her position as a Compensation Law Judge without having suffered any serious loss in the meantime. The State, on the other hand, would be in a more difficult position. Is it required to dismiss the judge who was hired for a seven year term as plaintiff's replacement, exposing itself to liability or criticism for that action? Is it required to carry additional unbudgeted judges during the pendency of litigation, which could easily consume two or three years before all proceedings were terminated? If so, how is it to pay them? Furthermore, if this were a case in which the termination and replacement was in fact designed to achieve political policymaking

results, should the State be barred from achieving those results by a preliminary injunction?

I conclude that the balance of hardships tilts in favor of the State.

The motion for a preliminary injunction is denied.