Horatio K. HAWKINS, Plaintiff-Appellee,

v.

Robert STEINGUT, Chairman of the New York State Workers' Compensation Board; Francis J. Griffin; William Kroeger; Ernest R. Latham; Henry M. Christman; Daniel Higgins; Seymour Posner; Ilene J. Slater; Ferdinand Tremiti; Walter Shields; William C. Mullany; Monica Gollub; and Joseph A. Tauriello, Individually and All, including the Chairman, Constituting the New York State Workers' Compensation Board; George Bevan; Donald S. Vass; The New York State Department of Labor and The State of New York, Defendants-Appellants.

No. 1297, Docket 87–7255.

United States Court of Appeals, Second Circuit.

Argued June 8, 1987.

Decided September 18, 1987.

Gail A. Wechsler, New York City (Levy, Gutman, Goldberg, and Kaplan, of counsel), for plaintiff-appellee.

Lawrence S. Kahn, New York City, Deputy Sol. Gen. (Robert Abrams, Atty. Gen. of the State of N.Y., of counsel), for defendants-appellants.

Before KEARSE, ALTIMARI and MAHONEY, Circuit Judges.

ALTIMARI, Circuit Judge:

This appeal presents the question whether the individual defendants are entitled to qualified immunity in a § 1983 action alleging that the New York State Workers' Compensation Board failed to reappoint Horatio Hawkins as a referee because he was a Republican. The United States District Court for the Northern District of New York, Cholakis, J., denied defendants' motion for summary judgment, holding that Hawkins had a clearly established right not to be terminated on the basis of party affiliation. We hold that defendants did not violate any of Hawkins' clearly-established federal rights by failing to reappoint him, and therefore the individual defendants are entitled to qualified immunity as a matter of law.

## BACKGROUND

The New York State Workers' Compensation Board ("the Board") is composed of thirteen members who are appointed by the Governor to staggered, seven-year terms. N.Y. Work. Comp. Law § 140 (McKinney 1965). In April 1972, the Board appointed Horatio Hawkins ("Hawkins"), who is a member of the Republican party, as a referee.

The duty of a Workers' Compensation referee is "to hear and determine claims for compensation, and to conduct such hearings and investigations and to make such orders, decisions and determinations as may be required by any general or special rule or order of the board...." N.Y. Work. Comp. Law § 150(b) (McKinney 1965 & Supp. 1987). Referees are appointed for seven-year terms, *id.* at § 150(a), and are referred to by the Board as "Workers' Compensation Law judges." 12 N.Y.C. R.R. § 300.1(e).

Hawkins alleges that when he was appointed in 1972, all the members of the Board were appointees of Governor Rockefeller, a Republican. In 1974, Democrat Hugh Carey was elected as Governor of New York, and according to Hawkins, proceeded to fill vacancies on the Board with members of the Democratic or Liberal parties.

When Hawkins' term expired in April 1979, the Board did not reappoint him. The Board did not, however, appoint a successor at that time, and Hawkins continued to serve as a "holdover" appointee, pursuant

to N.Y. Pub. Off. Law § 5 (McKinney 1952).

Hawkins contends that shortly before the expiration of his term, he informed the Board members of his desire to be reappointed. Arthur Cooperman, who was then Chairman of the Board, allegedly assured Hawkins that he would do everything in his power to get Hawkins reappointed. According to Hawkins, Cooperman encountered resistance from the Governor's office, and ultimately failed in his efforts on Hawkins' behalf. In July 1982, Hawkins received an official notice of termination from his Law Judge position.

In June 1984, Hawkins commenced an action against defendants in the District Court for the Northern District of New York. He alleged that the Board's failure to reappoint him as a Law Judge was based solely on Hawkins' affiliation with the Republican party. Hawkins claimed that this politically-motivated termination violated clearly-established first amendment principles and deprived him of property without due process in violation of the fourteenth amendment. Although Hawkins requested various forms of relief, the only claim relevant to this appeal is Hawkins' claim for damages, under 42 U.S.C. § 1983, against the Board members in their individual capacities.

Defendants moved to dismiss Hawkins' complaint on a number of grounds, including failure to state a claim, sovereign immunity and qualified immunity. On April 18, 1985, the district court granted the motion to dismiss in part, but denied the individual defendants' motion to dismiss Hawkins' § 1983 damages claim. The court found that the individual Board members were not entitled to qualified immunity from suit, apparently on the theory that Hawkins had a clearly-established first amendment right not to be terminated from his job because of party affiliation. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

The case was subsequently reassigned to Judge Cholakis. After further proceedings, the individual defendants moved for summary judgment, again asserting their entitlement to qualified immunity from suit for damages under § 1983. The district court declined to reconsider the first amendment issue, under the doctrine of "law of the case," holding that there had been no "change in controlling authority or other compelling reasons justifying reconsideration." The court further held that there was a genuine issue of fact as to whether Hawkins had a property interest in the Law Judge position. The court accordingly denied defendants' motion for summary judgment.

We hold that the individual defendants are entitled to qualified immunity, as a matter of law, because the right they are alleged to have violated was not a "clearly established ... right[ ] of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. We therefore reverse the judgment of the district court, and remand with instructions to grant summary judgment to the individual defendants.

## DISCUSSION

### 1. *Hawkins' first amendment claim*

Hawkins contends that the sole reason the Board did not reappoint him was his affiliation with the Republican Party. Defendants do not contest this allegation, and there is support for it in the record. Because we review the denial of a summary judgment motion, we must view the record in the light most favorable to the non-moving party, *see United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), and accept Hawkins' account of the reasons for his dismissal.

The issue before us is thus whether, in July 1982, Hawkins had a clearly-established constitutional or statutory right not to be terminated from his position because of his political affiliation. Only if Hawkins had such a right would the individual defendants lose the protection of qualified immunity from suit under § 1983. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

Hawkins asserts that the Supreme Court cases of *Elrod v. Burns,* 427 U.S. 347, 96

S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), as well as subsequent decisions relying on *Elrod* and *Branti*, clearly established the proposition that an administrative law judge such as Hawkins could not be terminated for political reasons. In both *Elrod* and *Branti*, the Supreme Court held that "patronage" dismissals of certain public employees violated the rights to freedom of political belief and association protected by the first amendment.

*Elrod* was a suit by former Republican employees of the Cook County, Illinois Sheriff's Office, who were dismissed following the election of a Democratic sheriff. The Court concluded that because plaintiffs were "nonpolicymaking" employees, they could not be dismissed based on party affiliation. "Policymaking" employees, on the other hand, *could* be dismissed for political reasons. The *Elrod* court did not define "policymaking," but offered the following guidelines:

> An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position. In determining whether an employee occupies a policymaking position, consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals.

427 U.S. at 368, 96 S.Ct. at 2687.

In *Branti*, the Court refined the "policymaking" exception to the prohibition against patronage dismissals. *Branti* involved a suit by assistant public defenders who had been dismissed by a newly-appointed, Democratic Public Defender. The *Branti* Court noted:

> [T]he ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

445 U.S. at 518, 100 S.Ct. at 1295. The Court held that party affiliation was not an appropriate requirement for the office of assistant public defender, because such employees owe their primary allegiance to their individual clients, and do not serve to implement the political agenda of any governing body.

The *Branti* Court expressly declined to consider whether party affiliation was an appropriate requirement for prosecuting attorneys, *see id.* at 519 n. 13, 100 S.Ct. at 1295 n. 13, but following *Branti*, the courts have held that party affiliation was an appropriate requirement for a city solicitor and assistant city solicitor, *see Ness v. Marshall*, 660 F.2d 517 (3rd Cir.1981), and for a city's corporation counsel, *see Bavoso v. Harding*, 507 F.Supp. 313 (S.D.N.Y.1980).

While *Elrod* and *Branti* developed a useful framework for assessing the constitutionality of patronage dismissals, it cannot be said that these decisions "clearly established" the law with respect to every governmental position. Following *Branti*, the courts have proceeded on a case-by-case basis to enumerate the permissible and impermissible instances of politically-motivated employment decisions; however, the *Branti* guidelines do not lend themselves to easy or automatic application. In the words of a recent First Circuit decision, "[i]dentifying generic categories of positions where partisan selection and rejection are permissible has ... proven to be an elusive and intractable task." *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 241 (1st Cir.1986) (en banc), *cert. denied*, —— U.S. ——, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987).

In *Jimenez Fuentes*, the First Circuit considered the question whether Regional Directors of the Puerto Rico Urban Development and Housing Corporation could be demoted because of their party affiliation. To aid its analysis, the court surveyed the body of circuit and district court opinions which had applied the *Elrod* and *Branti* standards to various types of governmental positions, *id.* at 240–41. None of the cases cited involved an administrative law judge or similar judicial position. The only case cited by Hawkins which dealt with a position somewhat similar to his own is *Savage v. Commonwealth of Pennsylvania*, 475

F.Supp. 524 (E.D.Pa.1979), *aff'd,* 620 F.2d 289 (3d Cir.1980), which involved the politically motivated dismissal of a Pennsylvania liquor control board hearing examiner.

The *Savage* case, however, does not warrant the denial of qualified immunity in this case. To begin with, the function of the hearing examiner in *Savage,* unlike that of a Workers' Compensation Law Judge, was solely to find facts, not to exercise any discretion. More importantly, a district court decision does not "clearly establish" the law even of its own circuit, much less that of other circuits. Although district judges within a particular circuit will frequently find each other's decisions persuasive, they remain free to disagree. Indeed, on the very issue raised in this suit, a judge of the Southern District of New York concluded that the plaintiff, another former Workers' Compensation Law Judge, was not likely to succeed on the merits of her § 1983 claim that *Elrod* and *Branti* protected her against politically-motivated dismissal; accordingly, the district court denied the plaintiff's motion for a preliminary injunction. *Garretto v. Cooperman,* 510 F.Supp. 816 (S.D.N.Y.1981), *aff'd,* 794 F.2d 676 (2d Cir.1984).

We therefore conclude that in July 1982, federal law was far from "clearly established" with respect to whether the prohibition against patronage dismissals extended to administrative law judge positions such as the one held by Hawkins. The individual defendants are thus entitled to qualified immunity as a matter of law from Hawkins' first amendment claim.

## II. *Deprivation of property without due process*

Hawkins also contends that defendants' failure to reappoint him deprived him of property, in violation of his fourteenth amendment right to due process. Hawkins maintains that even after his statutory term expired, he continued to have a property interest in the Law Judge position for the following reasons: (1) the Workers' Compensation Board customarily reappointed Law Judges who indicated a desire to be reappointed and whose past perform- ance had been satisfactory; (2) the former Board Chairman, Arthur Cooperman, had assured Hawkins on numerous occasions that he was making special efforts to secure Hawkins' reappointment. The district court found that these allegations raised a genuine issue of fact as to whether Hawkins retained a property interest in the position following the expiration of his term in 1979. We disagree.

Although Hawkins continued to serve as a Law Judge after his term expired in April 1979, he was considered a "holdover" under New York law. Public Officers Law § 5 provides in relevant part:

> Every officer ... shall ... hold over and continue to discharge the duties of his office, after the expiration of the term for which he shall have been chosen, until his successor shall be chosen and qualified; *but after the expiration of such term, the office shall be deemed vacant for the purpose of choosing his successor.*

N.Y.Pub.Off.Law § 5 (emphasis added).

A property interest in a particular position "arises only when an individual possesses 'a legitimate claim of entitlement' to continued job tenure." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 447 (2d Cir.1980) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). Such entitlements are not created by the Constitution, but rather by independent sources such as state law. *Id.* In Hawkins' case, the controlling state law created a "legitimate claim of entitlement" only during the seven-year term of appointment, N.Y.Work.Comp.Law § 150(a). Once the statutory term expired, however, state law deemed Hawkins' office to be "vacant." N.Y.Pub.Off.Law § 5.

Hawkins' property claim is controlled by our recent decision in *Schwartz v. Mayor's Committee on the Judiciary,* 816 F.2d 54 (2d Cir.1987). In *Schwartz,* a former family court judge brought an action against the committee which refused to recommend her reappointment following the expiration of her ten-year term. Schwartz argued, as does Hawkins, "that it was her 'under-

standing that incumbent judges of proven competence were routinely reappointed....'" *Id.* at 57. We held in that case:

> [T]he fact that many, or even most, incumbent judges have been reappointed cannot operate to raise appellant's "subjective expectation" to a constitutionally protected right, especially when doing so would contradict the relevant statutes and rules.

*Id.* (citation omitted).

Similarly, even if the Workers' Compensation Board customarily reappointed its referees, no cognizable property right would be created where the controlling state law provides for a fixed term of employment and deems the position to be vacant once that term expires. Nor could the assurances of former Board Chairman Arthur Cooperman serve to transform Hawkins' subjective expectation into a protectable entitlement. These assurances amounted to no more than promises that Cooperman would do his best to help Hawkins, and could not create a property right where state law provided expressly to the contrary. *See Baden v. Koch,* 638 F.2d 486, 492 (2d Cir.1980) ("mutual understandings and customs could not create a property interest ... when they [were] contrary to the express provisions of regulations and statutes"). Once Hawkins' statutory term expired, he had no property interest in the referee position as a matter of law.

## CONCLUSION

Because Hawkins had no clearly-established right to reappointment under either the first or fourteenth amendments, defendants are entitled to qualified immunity, in their individual capacities, from Hawkins' claim for damages under § 1983. We reverse the decision of the district court and remand with instructions to grant the individual defendants' motion for summary judgment.