John FLYNN, Louis Weir, Dominic Spano, Kenneth Lambert, Frank Stupar, John T. Joyce, James Boland, Gerald O'Malley, George Harbison, Paul Songer, Charles Velardo, Eugene George, Matthew Aquiline, Dan Schiffer, Joseph Speranza, Jr., and Vincent Delazzero, as Trustees of, and on behalf of, the Bricklayers & Trowel Trades International Pension Fund, Plaintiffs,

v.

ANTHONY MION & SONS, INC., Defendant.

No. 1:03–CV–0479.

United States District Court, N.D. New York.

July 29, 2003.

Dickstein, Shapiro, Morin & Oshinsky, LLP (Ira R. Mitzner, Esq., of Counsel), Washington, DC, for Plaintiffs.

Granik, Silverman & Hekker (David W. Silverman, Esq., of Counsel), New York City, for Defendant.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiffs, the trustees of the Bricklayers & Trowel Trades International Pension Fund (the "IPF") and the IPF, commenced the instant action pursuant to section 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145, seeking to collect contributions from defendant Anthony Mion & Sons, Inc. allegedly due under the terms of the "traveling contractors" clause of the collective bargaining agreement ("CBA") entered into between defendant and the Bricklayers & Allied Craftworkers Local Union No. 2 ("Local 2"). Plaintiffs also seek dues checkoffs allegedly owed to the International Union of Bricklayers and Allied Craftworkers ("BAC") pursuant to section 301 of the National Labor Relations Act, 29 U.S.C. § 185. Plaintiffs now move for summary judgment pursuant to Fed.R.Civ.P. 56. Defendant cross-moves to dismiss the Complaint in its entirety pursuant to Fed.R.Civ.P. 56. The motions were taken on submit without oral argument.

## II. FACTS

The IPF is a multiemployer employee benefit plan governed by ERISA. (Pls.'s SMF at ¶ 1.)[1] The IPF provides pension and other benefits to employees who work in the construction industry under contracts negotiated between local unions and employers. (Id.) Pursuant to these contracts, employers are obligated to make contributions to the IPF on behalf of the IPF's participants and beneficiaries. (Id.)

Defendant is a New York employer engaged in the tile setting business (Id. at ¶ 7.) Defendant is located in Schenectady, New York. (Def.'s SMF. at ¶ 1.) Defendant is a signatory to three collective bargaining agreements ("CBAs") requiring contributions to the IPF and other funds: (1) an agreement with Bricklayers Local 2 of Albany, generally covering the upstate New York area ("Local 2"); (2) an agreement with Local 7 of New York City, generally covering the New York—New Jersey area ("Local 7"); and (3) an agreement with Massachusetts Local 1, generally covering the area around Springfield, Massachusetts ("Local 1"). (Pls.'s SMF at ¶ 8.) Local 2 is defendant's "home" union. (Def.'s SMF at ¶¶ 2–4, 8, 11, 14.) Defendant's employees are members of Local 2. (Id.)

The CBAs required defendant to file reports and make contributions to various funds, including the IPF, for covered work. (Pls.'s SMF at ¶ 9.) For work performed within the jurisdiction of Local 2, defendant made contributions to the Local 2 funds at rates specified in the Local 2 CBA. Work performed outside of the Local 2 jurisdiction was covered by the "traveling contractors" clause. The traveling contractors clause provides that:

> When the Employer has any work specified in Article XVI [Article 1] of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by an agreement with another affiliate of the [International] Union [of Bricklayers and Allied Craftsmen], the Employer agrees to abide by the full terms and conditions of the Agreement in effect in the job site

**1.** The plaintiffs' and defendant's responsive statement of material facts will be referenced as "Pls.'s SMF" and "Def.'s RSMF" respectively. Defendant's statement of material facts in support of its motion for summary judgment will be referenced as "Def.'s SMF." Except where otherwise noted, the parties' statements of material facts will be cited only for those propositions for which there is no material dispute.

area. Employees covered by this Agreement who are sent to projects outside the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Section 1 of the Article [Article III] but in no case less than the established minimum wage scale of the local Agreement covering the territory in which such work is being performed, plus all contributions specified in the job site local Agreement. (*Id.* at ¶ 12.) [2]

Defendant performed work outside the geographical area of Local 2. (*Id.* at ¶ 22.) Where defendant performed work within the geographical area of a union other than Local 2 and used workers from the other union, defendant paid benefits and union dues for those workers to the relevant local union. (Def.'s SMF at ¶ 9.) Defendant paid these dues and benefit contributions at the rate specified in the local CBA (not at the rates contained in the Local 2 CBA). (Pls.'s SMF at ¶ 23.) [3] When defendant performed work outside the geographical area of Local 2, but workers from the local union were unavailable, defendant would send its Local 2 employees to the work site. (Def.'s SMF at ¶ 7.) In such circumstances, defendant would pay union dues for its Local 2 employees to the local jurisdiction, but would pay all fringe benefits to the Local 2 funds; not to the funds of the local jurisdiction. (*Id.* at ¶ 8.) Defendant paid fringe benefits in accordance with the rates specified in the

Local 2 CBA; not at the rates of the local jurisdiction. (Pls.'s SMF at ¶ 23.) [4]

Plaintiffs commenced the instant action claiming that it and other BAC affiliated funds are owed contributions for work performed under the traveling contractors clause. Plaintiffs contend that for those instances where defendant performed work outside the Local 2 area using Local 2 workers, it was obligated to make contributions to the funds of the local jurisdiction (and not to the Local 2 funds) and at the rates specified in the local jurisdiction's CBA or local job site agreement (not the rates specified in the Local 2 CBA). Plaintiffs seek to recoup the amounts that they claim should have been paid at the local funds' rates; that is, the difference between the amounts defendant paid to the Local 2 funds at the Local 2 rates and the rates set forth in the local CBAs or local job site agreements where the work was actually performed. Plaintiffs also seek to collect dues checkoffs allegedly owed the BAC.

## III. *STANDARD OF REVIEW*

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could

2. Both the Local 2 and Local 7 CBAs have a traveling contractors clause. The variations between the Local 2 and Local 7 contracts are indicated by the text in brackets. The text in brackets is the language contained in the Local 7 contract.

3. For example, if defendant performed work in Local 1's geographic area and used Local 1 workers, defendant paid benefits and union dues to Local 1 and paid at the rates specified in the Local 1 CBA.

4. For example, if defendant performed work in the geographic area of Local 1 and Local 1 workers were unavailable, defendant would send Local 2 workers to the job site. Defendant would pay union dues for the Local 2 workers to Local 1. Defendant would pay benefits for the Local 2 workers to the Local 2 funds at rates specified in the Local 2 CBA.

find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hawkins v. Steingut,* 829 F.2d 317, 319 (2d Cir.1987). Nevertheless, "[t]he litigant opposing summary judgment . . . 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir. 1980) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)).

## IV. DISCUSSION

### A. Standing

Defendant claims that plaintiffs do not have standing to bring the instant action. Defendant's argument is that: (1) it made all required contributions to the IPF and, thus, plaintiffs have not sustained any injury; (2) it is not subject to the terms of the IPF Trust Agreement; and (3) the IPF is not the proper party to assert violations of the terms of the Trust Agreement, the CBA or any other alleged obligation providing authority to require defendant to make payment to the IPF.

### 1. Injury In Fact

■ With respect to defendant's first standing argument, plaintiffs are seeking to recover deficient contributions to the IPF itself (i.e. the difference between the contributions defendant made into the home fund at the home fund rate and the contribution rate applicable to the particular jobsite). Thus, plaintiffs have adequately asserted a personal stake in the litigation.

### 2. Subject to the Terms of the Trust Agreement

■ Defendant next argues that it is not an "employer" within the meaning of the Trust Agreement. Defendant contends that it is not an "employer" as defined in the Trust Agreement because it does not have a collective bargaining agreement with the BAC, as opposed to a local affiliate (*i.e.,* the Local 2).

The IPF Trust Agreement defines an "employer" as anyone "who is a member of, or is represented in collective bargaining by, an association and who is bound by a collective bargaining agreement with the Union providing for the making of payments to the Trust Fund with respect to employees represented by the Union." (Def.'s Ex. O at Art. I, sec. 1.1.) The term "Union" is defined to mean the BAC, rather than a local affiliate. Thus, on the surface, defendant's argument has some appeal. The inquiry, however, does not end there. The CBAs to which defendant is a party provide that:

> The Employers agree to pay, as determined by Union, an amount for Pension per hour plus an amount per hour for supplemental I.U. Pension Fund for each hour for which the employee has worked for all employees covered by this Agreement, to the Bricklayers & Allied Craftworkers Benefit Funds. . . . The said Pension Fund shall be administered pursuant to an Agreement and Declaration of Trust administered jointly by an equal number of representatives of the Employers and the Union. . . . A copy of said Agreement and Declaration of Trust, together with any amendments thereto, shall be considered as a part of

this Agreement as thought set forth here at length.

(Stupar Decl. at Ex. 3, Art. III, sec. 4(b); Stupar Decl. at Ex. 2, Art. IV, sec. 2(1)).

Thus, defendant explicitly agreed to make payments into the IPF and the Trust Agreement clearly is incorporated into the CBAs. The CBAs also provide that:

> The Employer hereby agrees to be bound by and to the Agreements and Declarations of Trusts for the I.U. Pension Fund as though he had actually signed the individual documents and further agrees to be bound by all actions taken by the Trustees of this fund pursuant to said Agreements and Declarations of Trusts.

(Stupar Decl. at Ex. 2, Art. IV, sec. 2(2); *see also* Stupar Decl. at Ex. 3, Art. III, sec. 3(U);).

This provision makes it clear that defendant agreed to be bound by the Trust Agreement. Finally, the CBAs incorporate the national BAC agreement as follows:

> It is understood and agreed by both Parties that the currently existing national agreement by and between the Tile Contractors Association of America and Bricklayers and Allied Craftworkers of America; shall form part of this Agreement.

(Stupar Decl. at Ex. 2, Art. X).

In light of the above-referenced provisions of the CBAs to which defendant is a party, it cannot be said that defendant is not an "employer" or otherwise obligated under the terms of the Trust Agreement. Defendant explicitly agreed to make payments to the IPF and be bound by the Trust Agreement. Even assuming defendant did not so agree, defendant is an "employer" within the meaning of the Trust Agreement because the national agreement was incorporated by reference in the defendant's CBAs thereby making it

"bound by a [CBA] ... with the [BAC] providing for the making of payments to the Trust Fund."

### 3. *Plaintiffs' Authority*

■ Defendant next argues that plaintiffs are improperly attempting to collect fringe benefits on behalf of other funds or entities; namely, the International Health Fund ("IHF"), the International Masonry Institute ("IMI"), and the BAC. Plaintiffs respond that the various Bricklayer affiliated entities formed the Central Collection Unit of the BAC ("CCU") to maintain collection actions on behalf of all Bricklayer affiliated entities. (Stupar Decl., Ex. 1.) According to plaintiffs, the collection procedures of the CCU authorize the IPF to sue on behalf of the other entities. (*Id.*)

Because the IPF has been appointed as an agent of the IHF, the IMI and the BAC for purposes of collecting any delinquencies, plaintiffs are authorized to maintain this action. Moreover, the Second Circuit has held that the administrators of ERISA funds may sue on behalf of the funds as third party beneficiaries of the CBA. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Services Fund and Annuity Fund v. Lollo,* 35 F.3d 29, 34–35 (2d Cir.1994); *see also Benson v. Brower's Moving & Storage, Inc.,* 907 F.2d 310, 313 (2d Cir.1990); *Boards of Trustees of Ohio Laborers' Fringe Benefit Programs v. Blaze Constr., Inc.,* No. 01–CV–1068, 2002 WL 31951267 at *6 (S.D.Ohio Dec. 11, 2002). It, therefore, follows that plaintiffs have standing to bring this case.

### B. *The Traveling Contractor's Clause*

■ Section 515 of ERISA provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or

under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Section 515 "establishes 'an independent federal right of action distinct from the contract on which the duty to contribute is based,' through which ERISA funds may seek to compel employer contribution." *Trustees of the Nat'l Auto. Sprinkler Indus. Pension Fund v. Fairfield County Sprinkler Co.,* 243 F.3d 112, 115 (2d Cir.2001) (*"Fairfield County"*) (quoting James F. Jorden, Waldemar J. Pflepsen, Jr., & Stephen H. Goldberg, Handbook on ERISA Litigation § 7.01[A][1], at 7–5 (2d ed.2000)). In enacting section 515, "Congress intended to limit the defenses available to an employer when sued by an employee benefit plan.... [U]nder ERISA § 515, multiemployer pension funds, although third-party beneficiaries of collective bargaining agreements between employers and unions, are nevertheless 'in a position superior to the original promisee [the union], analogous to a holder in due course.'" *DeVito v. Hempstead China Shop, Inc.,* 38 F.3d 651, 653 (2d Cir.1994) (quoting *Benson,* 907 F.2d at 314) (alterations in *DeVito* ). Thus, "only two employer defenses are permitted in ERISA § 515 contribution actions: '(1) that the [ERISA fund] contributions themselves are illegal, and (2) that the collective bargaining agreement is void (not merely voidable).'" *Fairfield County,* 243 F.3d at 117 n. 3 (quoting *Benson,* 907 F.2d at 314) (alterations in *Fairfield County* ).

 "[F]or plaintiffs to prevail on their claim for summary judgment under Section 515—and to survive defendant's cross-motion—they must show that the Agreement creates an unambiguous contractual obligation on the defendant to make contributions pursuant to the con-

tended provisions." *Trustees of the Bricklayers and Allied Craftworkers v. Charles T. Driscoll Masonry Restoration Co.,* 165 F.Supp.2d 502, 510 (S.D.N.Y.2001).

'Summary judgment is only proper in contract disputes if the language of the contract is wholly unambiguous.' *Mellon Bank v. United Bank Corp.,* 31 F.3d 113, 115 (2d Cir.1994) (internal quotations omitted). When the language of a contract is susceptible to different interpretations and "where there is relevant extrinsic evidence of the parties' actual intent, then the contract's meaning becomes an issue of fact precluding summary judgment." *Sayers,* 7 F.3d at 1094 (internal quotations omitted).

Ascertaining whether the language of a contract is clear or ambiguous is a question of law to be decided by the court. *Mellon Bank,* 31 F.3d at 115. Contract language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement...." *Sayers,* 7 F.3d at 1095 (internal quotations omitted). No ambiguity exists, however, "when contract language has a definite and precise meaning, unattended by danger of misconception ... and concerning which there is no reasonable basis for a difference of opinion." *Id.* (internal quotations omitted).

*Lucente v. Int'l Bus. Machines,* 310 F.3d 243, 257 (2d Cir.2002).

 The issue presented here is whether, under the traveling contractors clause, defendants were obligated to make fund contributions for work performed by Local 2 workers outside the Local 2 area at rates specified in the CBAs or job site agreements of the jurisdiction where the work was actually performed. Based upon a review of the traveling contractors

clause, it cannot be said to be ambiguous.[5] The traveling contractors clause plainly provides that

> [w]hen the Employer has any work specified in ... this Agreement to be performed outside of the area covered by this Agreement and within the area covered by an agreement with another affiliate of the Union, the Employer agrees to abide by the full terms and conditions of the Agreement in effect in the job site area.

(Pls.'s Ex. B(2).) This only can be interpreted to mean that when defendant performs work in an area covered by another CBA, defendant must comply with the terms of that other CBA. The traveling contractors clause further provides that:

> [e]mployees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Section 1 of the Article but in no case less than the established minimum wage scale of the local Agreement covering the territory in which such work is being performed, plus all contributions specified in the job site local Agreement.

This language also has only one possible meaning—that when defendant sends its Local 2 workers to perform work in another jurisdiction, it must pay (1) the greater of the wages specified in the Local 2 agreement or the agreement where the work is being performed; and (2) all contributions specified in the agreement where the work is being performed. Indeed, this is defendant's own interpretation of the traveling contractors clause. (Mion Tr. at 77.)[6] It, therefore, follows, that because defendant paid benefits to Local 2 employees sent to "foreign" jurisdictions into Local 2 funds and at rates specified in the Local 2 CBA, it did not comply with the terms of the traveling contractors clause. Under that clause, defendant was obligated to pay benefits at rates specified in the local CBA or job site agreement.

This conclusion is substantiated by the terms of the International Agreement between the Tile Contractors' Association of America, Inc. and the International Union of Bricklayers and Allied Craftworkers (the "International Agreement"). (Def.'s Ex. T.). The International Agreement also addresses the traveling contractor situation. The International Agreement provides that:

> When the Employer assigns company field employees or ... is required to recruit employees who normally reside or work outside the jurisdiction of the jobsite Union ... the Employer shall pay all contributions to health and welfare and pension plans into the home trust funds designated by such employ-

---

5. Thus, there is no need to refer to extrinsic evidence such as allegations of the parties' understanding, fund report forms, etc.

6. At deposition, Anthony Mion was asked the following questions and gave the following answers:
Q. So, for example, a Local 2 member working for you, you send that member to Maine to work in that jurisdiction. In that jurisdiction there is a ... [CBA], you are not a party to it, but there is one in that area, so is it not true when you send your employees up there, they are governed by that agreement?
A. I should pay them that particular wage.
Q. Whatever the job site agreement requires?
A. Right.
Q. And that includes benefits; right?
A. Yes.
Q. So, in other words, when your people are sent by you to Maine, they are governed by ... whatever the wage and benefits scales are up there, and they are governed by the local agreement up there as well; is that right?
A. Yes.

ees at the applicable home trust fund rates....

Wages for company filed employees and any recruited employees shall be paid in accordance with the jobsite agreement. If the contributions specified in the previous paragraph to the applicable home trust funds for such company field and recruited employees are less than the health and welfare and pension contributions called for in the jobsite agreement then the Employer shall pay the difference to the Bricklayers and Trowel Trades International Retirement Savings Plan and/or International Union Vacation Fund.

(Def.'s Ex. T at Art. VII(B)(1)(b); *see also* Second Decl. of David Stupar at ¶ 28.) While the International Agreement requires home funding at the home fund rate, it also mandates that the employer pay the difference between the home fund and any higher jobsite rates into a defined contribution fund for the benefit of the employees. This further supports plaintiffs' argument that defendant's contributions (which were paid into the home fund at the home fund rate) are deficient. Here, the evidence is that defendant home funded the benefits at the home fund rate. There is no evidence that defendant paid the difference between the jobsite rate and the home fund rate into a defined contribution fund.

The traveling contractors clause may, however, be ambiguous with respect to whether defendant was required to make contributions to the local jobsite funds. On the one hand, the traveling contractors clause requires full compliance with the local jobsite CBA. Arguably, this would require that all benefit contributions be made into the local jobsite funds. On the other hand, the International Agreement requires that contributions be made into the home fund at the home fund rate and that the difference between the home and a higher local jobsite rate be paid into a

specified fund. Any such ambiguity regarding to which funds the payments are to be made need not be resolved because plaintiffs admit that defendant could home fund the contributions provided it paid any difference between the Local 2 and a higher jobsite rate into a defined contribution fund for the benefit of its employees (Second Decl. of David Stupar at ¶ 28) and any local foreign funds (i.e. non Local 2 funds) are not suing for delinquent contributions. Accordingly, under the facts and circumstances presented, defendant was not precluded from making contributions into the home fund at the Local 2 rate. Having elected to home fund, however, defendant was obligated to pay the difference between the Local 2 rate and the higher local jobsite rate into a defined contribution fund for the benefit of its employees.

## C. *Section 302(c)(5) of the LMRA.*

■■■■ Defendant next argues that interpreting the traveling contractors clause to require it to pay benefits for "foreign" work into the local jobsite funds and at local jobsite rates would violate section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. 186(c)(5), because defendant's employees could never qualify for benefits under those local jobsite funds. "Section 302(a) of the LMRA makes it unlawful as a general matter for employers to provide payments to union affiliated representatives and entities, including union established ERISA funds, beyond narrowly prescribed exceptions set out in § 302(c)." *Fairfield County*, 243 F.3d at 116.

Section 302(c)(5) operates to permit employer payments to union trust funds, excepting them from the prohibition of § 302(a), if, among other conditions:

1. "the detailed basis on which such payments are to be made is specified in a written agreement with the

employer;" 29 U.S.C. § 186(c)(5)(B), and

2. "such payments are held in trust for the purpose of paying . . . for the benefit of [the] employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance[.]" 29 U.S.C. § 186(c)(5)(A).

*Id.,* at 117. Under the circumstances presented, the traveling contractors clause does not violate section 302(a) or 302(c)(5) because, as discussed, plaintiffs concede that defendant is not required to make payments to any foreign local funds. Defendant can comply with the terms of the national agreement and home fund the contributions at the home rate and pay the difference between the home rate and the higher local jobsite rate into a defined contribution plan for the benefit of its employees. (*See* Def.'s Ex. T at Art. VII(B)(1)(b)). This methodology would ensure that the contributions inure to the benefit of defendant's employees. Thus, there is no issue whether any of defendant's employees could ever qualify under the terms of the "foreign" plans, thereby raising the potential that the traveling contractor's clause violates section 302(c)(5).

### D. *Dues Checkoff*

Plaintiffs also seek delinquent BAC Dues Checkoff and interest thereon. Plaintiffs have failed to substantiate how defendant has failed to fulfill its obligation to pay BAC Dues Checkoff. Accordingly, plaintiffs' motion for summary judgment in this regard must be denied.

### E. *Damages*

There does not appear to be any dispute that defendant made payments to the Local 2 fund at the Local 2 rate. (*See* Stupar Decl. at ¶ 11; Semo Decl. at ¶ 9.) Thus, with respect to work performed by Local 2 workers outside of the Local 2 jurisdiction, defendant is responsible for the difference between the Local 2 and local job site rates, plus interest. Based on the record presented, it is unclear which funds are owed what moneys. Plaintiffs merely claim that defendant owes $201,595.09 in unpaid contributions to the IPF, IHF and IMI without providing evidence substantiating that figure or demonstrating what monies should be paid to each particular fund. Accordingly, issues remain regarding damages.

### V. *CONCLUSION*

Plaintiffs are authorized to maintain the instant action and have standing to do so. When defendant sends Local 2 workers to foreign job sites, the traveling contractors clause requires defendant to pay wages and benefit contributions at the greater of the rates specified in the Local 2 CBA or the local job site CBA or agreement. Under such circumstances, defendant may contribute benefit contributions into the Local 2 funds at the Local 2 rates provided it pays any differential between the Local 2 and the higher local job site rates into a defined contribution fund for the benefit of its employees. Under the circumstances described herein, the traveling contractors clause does not run afoul of section 302(c)(5) of the LMRA. Defendant is liable for the difference between the Local 2 and higher local job site rates, plus interest. Issues remain regarding how much money is owed and to which funds those monies are owed.

Plaintiffs have failed to substantiate defendant's liability for delinquent BAC dues checkoff.

Accordingly, it is

ORDERED that:

1. Defendant's cross-motion to dismiss the Complaint is DENIED;

2. Plaintiffs' motion for summary judgment is GRANTED IN PART as follows:

 a. plaintiffs are entitled to judgment for the difference between the Local 2 and local job site rates, plus interest;

 b. the amount of damages to each fund shall be the subject of further proceedings;

 c. plaintiffs' claim for BAC dues check-off is DISMISSED.

3. Plaintiffs shall file and serve a verified application and memorandum of law for damages on or before August 15, 2003. Defendant shall file and serve a verified response and memorandum of law on or before August 29, 2003. The application may include a request for a bench trial on the issue of damages setting forth the reasons therefore.

IT IS SO ORDERED.